### In re IVERTSEN.

(District Court, N. D. California, Second Division. September 18, 1916.)

1. SEAMEN ⬡⟹24—WAGES—RIGHT TO PARTIAL PAYMENTS—CONSTRUCTION OF STATUTE.

Under Rev. St. § 4530 (Comp. St. 1913, § 8322) as amended by Act March 4, 1915, c. 153, § 4, 38 Stat. 1165, which provides that a seaman shall be entitled to receive "on demand * * * one-half part of the wages which he shall have then earned at every port where such vessel, after the voyage has commenced, shall load or deliver cargo before the voyage is ended," the seaman is entitled at each such port to receive one-half the total sum then due him after deducting previous payments.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 123–128; Dec. Dig. ⬡⟹24.]

2. SEAMEN ⬡⟹24—WAGES—RIGHT TO PARTIAL PAYMENT—CONSTRUCTION OF STATUTE.

Under the further provision of said section, that "any failure on the part of the master to comply with this demand shall release the seaman from his contract and he shall be entitled to full payment of wages earned," a demand and refusal are necessary to put the master in default.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 123–128; Dec. Dig. ⬡⟹24.]

3. SEAMEN ⬡⟹21—DESERTION—MISTAKE IN PAYMENT OF WAGES.

A seaman demanded his pay and discharge at an intermediate port, and, being refused, left the ship. Before he went, without any demand therefor, he was paid what was thought to be the half wages due him under the statute, but through mistake the amount paid was too small. Held, that the mistake in payment did not relieve him from the charge of desertion, and that he thereby forfeited all wages due him.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 92–110; Dec. Dig. ⬡⟹21.]

In the matter of the petition for payment of wages of Sigvard B. Ivertsen, a deserting seaman from the steamer Ventura. Petition denied.

VAN FLEET, District Judge. The petitioner on March 6, 1916, while the steamer Ventura, then on a voyage from San Francisco to

Sydney, New South Wales, and other Pacific ports and return, was touching at Honolulu on her outward voyage, shipped on her as an able seaman at $40 per month, signing articles for the remainder of the voyage out and back to San Francisco. At Sydney petitioner demanded and was paid $14.80, one-half of the wages then earned by him. On her return voyage the vessel against touched at Honolulu, and on April 11, 1916, at that port, petitioner, for what reason does not appear, applied to the captain for a final discharge and payment of the balance of his wages then earned. This request was refused, whereupon petitioner announced to the captain his refusal to continue the voyage, saying:

"Well, I am not going out on the ship anyhow; I am going to leave it; I can claim half of my money."

As will hereafter appear, however, petitioner did not at that or any other time make a demand upon the captain for the payment to him of one-half his wages, or anything less than all, and for his discharge. It does appear, however, that the captain directed the purser to pay him one-half the amount then earned, and the purser, computing what he believed to be the amount to which petitioner was entitled under the law, arrived at the sum of $8.75, which was paid him, and which he accepted without demur, took his dunnage, and left the ship. Thereafter on the same date he was duly entered in the vessel's log as a deserter, and subsequently, on the arrival of the vessel at San Francisco, the master turned over to the United States shipping commissioner at that port the sum of $24.67 as constituting the balance of wages earned by petitioner and remaining unpaid at the date of his desertion, which amount was by the commissioner paid into the registry of this court as required by the statute.

After the sailing of the steamer from Honolulu, the petitioner, claiming that he had not been paid all that he was entitled to receive on leaving the ship, made application through an agent of the Sailors' Union to the shipping commissioner at that port for relief, but was informed that that officer had no jurisdiction; that he should apply to the shipping commissioner at San Francisco. Thereafter, on July 10, 1916, when the officers of the ship were again in Honolulu, the evidence of the petitioner and that of the captain and purser as to the circumstances attending petitioner's quitting the vessel was taken before Hon. Charles F. Clemons, one of the United States District Judges for Hawaii, and this evidence, with petitioner's application, was thereupon transmitted to the shipping commissioner at San Francisco, by whom the matter has now been presented to this court.

[1] The theory upon which petitioner's application proceeds is that he was not paid at Honolulu the full amount of wages to which he was then entitled under the law, and that by reason of this fact he was at liberty to treat his contract as at an end and leave the ship; that such act did not, under the circumstances, constitute desertion; and that he is now entitled to demand and receive the full amount of wages earned by him on the voyage. This claim is based upon the provisions of section 4530, Revised Statutes (Comp. St. 1913, § 8322), which, so far as pertinent, reads:

"Every seaman on a vessel of the United States shall be entitled to receive on demand from the master of the vessel to which he belongs one-half part of the wages which he shall have then earned at every port where such vessel, after the voyage has been commenced, shall load or deliver cargo before the voyage is ended and all stipulations in the contract to the contrary shall be void: Provided, such a demand shall not be made before the expiration of, nor oftener than once in five days. Any failure on the part of the master to comply with this demand shall release the seaman from his contract and he shall be entitled to full payment of wages earned. * * * "

The fact which it is claimed brings the case within this section is this: It seems that the purser, in figuring the half of the wages authorized by the master to be paid petitioner on April 11, 1916, construed the statute to mean that previous payments made are to be included in determining the wages earned at the time of any subsequent demand, which he accordingly did. He testified that he computed one-half of the wages earned by halving the total wages earned by petitioner up to that date and subtracting from such half the $14.80 advanced at Sydney, and thus reached his conclusion that but $8.75 was payable at that time. It would seem that this was an error. While somewhat awkwardly expressed, what the statute really means, I think, is that, deducting previous advances, the seaman shall be entitled to receive one-half of the balance of any wages earned and remaining unpaid at the date of demand. In this view the purser's computation would not result in ascertaining correctly the half of the wages then earned. The entire wages earned by petitioner up to that date was $47.99. He had been paid at Sydney $14.80. This left on the date in question the sum of $33.19 earned over and above the previous payment, one-half of which was $16.59. This latter sum constituted one-half of petitioner's wages earned and unpaid up to that date. That this is the correct construction is, I think, borne out by the section as it stood before amendment. It then provided:

"Every seaman shall be entitled to receive from the master of the vessel to which he belongs, one-third part of the wages which shall be *due* to him at every port where such vessel shall unlade and deliver her cargo before the voyage is ended, unless the contrary be expressly stipulated in the contract; and as soon as the voyage is ended, and the cargo or ballast is fully discharged at the last port of delivery, he shall be entitled to the wages which shall be then due."

Quite clearly under that language the wages due would be the sum to be paid the seaman if the shipping articles actually terminated at the intermediate port. Strictly speaking, the wages were not "due" at the intermediate port, as only one-third, as the statute then stood, was payable at that time. Evidently it was for this reason that, when the section was amended, the words "which he shall have then earned" were substituted for the word "due." But that Congress did not intend to change the relative amount made payable to the seaman is evident, when it is considered that under the method of computation adopted by the purser only comparatively insignificant sums would be payable at the second or any other intermediate port at which the vessel should subsequently touch. The purser began his halving process a step too soon.

[2, 3] But this mistake of the purser does not have the effect claimed by petitioner, assuming that a mere mistake, in the absence of protest,

could ever have such effect, since the facts, notwithstanding the error, fail in a material respect to bring petitioner's case within the section in question. The statute, it will be observed, expressly requires that there shall be a demand made upon the master for the partial payment provided for in order to put the latter or his vessel in default and release the seaman from his contract. This essential, as above indicated, was lacking. The evidence of the petitioner himself clearly establishes that no such demand was made. It is true that in his petition, sworn to before a notary public on June 14, 1916, petitioner states:

That after the denial by the master of payment in full and his discharge he "then applied for a one-half part of the wages due him under and in accordance with R. S. § 4530," and that the purser, "acting for, and in the interest of, the master of the said S. S. Ventura, did pay the said Sigward B. Ivertsen the sum of eight ($8,00) dollars in payment of all claim of the said Sigward B. Ivertsen—such act on the part of the agent of the master of the said American steamer Ventura being in violation of and contrary to what was due deponent according to law."

But on his subsequent examination before Judge Clemons he testified in response to questions put by the agent of the Sailors' Union:

"Q. Did you apply for your discharge? Did you ask the captain to pay you off? A. Yes, sir. . Q. What did he say? A. He said he won't pay me off. Q. Well, then, what, if anything, did you do? A. I talked to you. I went up to see the agent of the Sailors' Union. Q. Well, what, if anything, were you told when you interviewed the agent of the Sailors' Union? A. I want to get my money. Q. What, if anything, were you told by the agent of the Sailors' Union? What did he tell you? A. The agent told me to go down and see the captain of the Ventura. Q. Did you do so? A. Yes, I went back again. Q. What did he tell you? A. He told me he wouldn't pay me off. * * * Q. I will ask you whether or not you applied to the captain for the half of the money due you upon finding that he refused to pay you off. A. I didn't apply for it. Q. How did you happen to receive it? A. I went down to the captain. Q. What, if anything, did he say again? A. He said he wouldn't pay me off. Q. I will ask you how you happened to secure any portion of that money. A. He was going to pay me off when he got to 'Frisco. Q. Was there anything said about the half of your money, either by the captain, yourself, or purser? A. No; I went down aboard. I got $8.75. I had some more coming—$13 I was figuring on. Q. You had drawn, I believe, £3? A. £3 sterling in Sydney. Q. That amounted to how much? A. $14.75—80 cents. Q. Then you got $8.75 and left the ship? A. $8.75 and left the ship."

It is thus made clear that what the petitioner sought and what he demanded was, not the half of his wages, but their payment in full, and to be discharged at an intermediate port—demands which the master was perfectly justified in refusing him. The master was clearly not required under the shipping articles, in the absence of some good reason, to grant petitioner's request unless he saw fit to do so. And there is nothing in the evidence tending to disclose the slightest reason why petitioner should have been accorded the privilege of release from his contract. Had petitioner made demand for the payment of one-half the wages earned, and this had been refused, he would have been within his rights under the statute in treating his contract of service at an end and leaving the ship; and he would then have been entitled to the relief now sought. But, not having made such demand, he was not within his rights in abandoning his contract and quitting the ship,

and the master was fully justified in treating him as a deserter and entering him on the log as such.

The petitioner asks, in effect, that if he cannot be allowed the full amount of his unpaid wages the court award him such amount as it may deem him "in justice entitled to according to law and human right." But unfortunately, in attempting to take the law into his own hands, petitioner has forfeited all rights in the premises which he might otherwise have had. Section 4596, R. S. (Comp. St. 1913, § 8380), provides:

"When any seaman who has been lawfully engaged * * * commits any of the following offenses he shall be punished as follows:

"First. For desertion, * * * by forfeiture of all or any part of the clothes or effects he leaves on board and of all or any part of the wages or emoluments which he has then earned. * * *"

Under this section the petitioner must be held, in the circumstances disclosed, to have forfeited all right to the fund paid into the registry, and the court is left without discretion to award him any portion thereof. While the courts should be jealous to carry out the laudable and humane purpose evident in the legislation of Congress, that seamen by reason of their hazardous calling and the condition of subordination and control to which they are necessarily subjected over that of other classes of labor, are to be fully protected against oppression and wrong, the limitations of their rights as prescribed by the law cannot be ignored; and the courts are not at liberty, in adjudicating controversies of this nature, any more than in those arising from contractual relations in other employments, to base their award on mere abstract considerations of moral right, which do not find sanction in the statute.

It results that the petition must be denied in its entirety; and it is so ordered.