## THE STRATHEARN.

(District Court, N. D. Florida. January 2, 1917.)

1. SEAMEN ⊜⟩24—WAGES—PART PAYMENT AT INTERMEDIATE PORTS—CONSTRUCTION OF STATUTE.

Under Seamen's Act March 4, 1915, c. 153, § 4, 38 Stat. 1165, which provides that every seaman shall be entitled on demand to receive one-half part of the wages which he shall have then earned at every port where the vessel shall load or deliver cargo, and that a refusal of his demand shall release him from his contract and entitle him to full payment of wages earned, "provided such a demand shall not be made before the expiration of nor oftener than once in five days," a seaman is not entitled to make such·a demand until the vessel has been in port for at least five days.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 123–128; Dec. Dig. ⊜⟩24.]

2. ADMIRALTY ⊜⟩25—SUIT BETWEEN FOREIGNERS—DISCRETIONARY JURISDICTION.

The practice, in case of the institution of a suit in admiralty between citizens of a foreign country, of notifying the consul of that country that he may if desired make objection to the taking of jurisdiction, has for object the speedy adjustment between the parties, and, where no such objection is made until final hearing and after one of the parties has left the jurisdiction, the court may properly, if justice to the other party requires it, retain jurisdiction of the case.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 260–264; Dec. Dig. ⊜⟩25.]

3. SEAMEN ⊜⟩21—WAGES—DESERTION.

Seamen on a British vessel who left their ship in an American port without good cause held deserters and not entitled to recover wages under the British law.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 92–110; Dec. Dig. ⊜⟩21.]

4. SEAMEN ⊜⟩21—"DESERTER."

The word "deserter," as applied to seamen, means one continually and intentionally absent from the ship, constituting a quitting of the service of the vessel.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 92–110; Dec. Dig. ⊜⟩21.

For other definitions, see Words and Phrases, First and Second Series, Deserter.]

In Admiralty. Suit by Hugo Ronlund, John Hoikkla, and John Dillon against the British steamship Strathearn. Decree for respondent.

Blount & Blount & Carter, of Pensacola, Fla., and Ralph James M. Bullowa, of New York City, for the steamer.

Frederic R. Coudert and Howard Kingsbury, both of New York City, as amicus curiæ on behalf of British Consul.

SHEPPARD, District Judge. This case concerns two seamen and a carpenter of the British steamship Strathearn, who assumed that

they were entitled to invoke the provisions of the new so-called Seamen's Act of 1915, under which they made demand on the master of the Strathearn for wages under section 4 of the act. Upon the master's refusal to comply with their demands, they quit the service of the ship and libeled.

The Strathearn arrived in the Port of Pensacola between 5 and 6 o'clock July 31, 1916, and shortly thereafter the libelants left her under the following circumstances:

Hugo Ronlund went ashore on the morning following the ship's arrival in Pensacola, without permission and against the express command and orders of the master. Ronlund was dissatisfied with the hours of service on the ship, and upon a dispute with the master regarding the matter proceeded to the consul. While ashore for this purpose, he learned that there had been passed by Congress an act conferring great benefits upon seamen. He then sought a lawyer's advice. Thereupon the seaman's trouble over the hours of service was overshadowed by the prospects of payment of half wages in port. Ronlund then proceeded aboard ship to demand half wages due him up to that date. The master refused. Thereupon Ronlund left the service of the ship and libeled.

John Koikkla left the ship without permission on the morning of August 1, 1916, within 24 hours of the Strathearn's arrival on the 31st of July, ostensibly to see a doctor. The whole day of August 1st passed with Hoikkla on shore and without his having seen a doctor. The day following, Hoikkla saw a doctor about some injuries he had received, and returning to the ship, ignorant of the beneficent provisions of the Seamen's Act, was "put wise" to the "American law." In consequence of which Hoikkla followed Ronlund's example.

John Dillon, not as sagacious as the author of the work on Municipal Corporations, but content with the distinction of ship's carpenter, likewise left the Strathearn on the morning of August 2d. Dillon's right to recover depends upon his conduct at the time. There is testimony that Dillon subsequently returned to the ship and worked, but that he made no claim for wages for such time. He worked aboard, it appears, simply for food and lodging, intending to pay for same when he recovered from the ship. Dillon, it seems, had some trouble with the boatswain. The master did not adjust the matter satisfactorily, and he also came ashore to see the consul, but received no "satisfaction" from that source. While ashore for this purpose, Dillon met the other two libelants, who advised him of the salutary provisions of the new Seamen's Act. Thereupon Dillon hied himself to a lawyer's office. Afterward he, too, returned to the ship and demanded half of his wages due and, upon a refusal by the master, quit the ship and her service.

The foregoing is a brief summary of the evidence.

Counsel on both sides have argued at great length on the rights of the libelants to recover under the La Follette Act March 4, 1915, c. 153, 38 Stat. 1164, and, if not under that act, then under the general British law.

For reasons of expediency the case will be treated with a view to liability of the ship under the Seamen's Act of 1915; and, secondly, the right of libelants to recover under the British law.

[1] First, it is contended by libelants that they are each entitled to recover under the La Follette Act, § 4, which is as follows:

"Every seaman on a vessel of the United States shall be entitled to receive on demand from the master of the vessel to which he belongs one-half part of the wages which he shall have then earned at every port where such vessel, after the voyage has been commenced, shall load or deliver cargo before the voyage is ended and all stipulations in the contract to the contrary shall be void: Provided, such a demand shall not be made before the expiration of, nor oftener than once in five days. Any failure on the part of the master to comply with this demand shall release the seaman from his contract and he shall be entitled to full payment of wages earned. * * * And provided further, that this section shall apply to seamen on foreign vessels while in harbors of the United States, and the courts of the United States shall be open to such seamen for its enforcement"

—because, upon the arrival of the Strathearn in Pensacola, and after occurrence of the facts recited in the summary, each seaman demanded of the master one-half part of his wages, which request was refused; and because of such refusal they rightfully left the service of the ship, for the act ipso facto put an end to libelants' respective contracts for service and entitled each of them to recover full wages for the time on board.

The respondent questions primarily the applicability of the Seamen's Act on constitutional grounds; and, secondly, denies the right of libelants to recover wages under the British law, which is the law of the contracts in this case.

Pretermitting the subject which evoked most of the argument, viz. whether the Seamen's Act would apply to a case where all of the parties to the action are foreigners and under a foreign flag, or the constitutionality of the act, it is certain that the statute applies only to cases embraced by its terms, and that such cases must meet the express requirements of the act to set the remedial provisions into operation.

From the uncontradicted evidence it appears that each of libelants left the service of the Strathearn within 48 hours of her arrival; that it was within this time and before the expiration of the statutory "five days" that they made their demands on the master for half part of the wages earned.

By reference to the act it will be noted that seamen are entitled to receive on demand one-half part of their wages then earned at every port where such vessel shall load or discharge cargo, etc., "provided, such a demand shall not be made before the expiration of * * * five days." Therefore the demand of libelants was unseasonably made, and the statute did not apply, and there can be no question of liability under it.

[2] All of the parties to this case are foreigners, and their relations and obligations arise out of a contract entered into in a foreign country and are subject to the laws of such country.

This controversy is a matter closely related to the internal discipline

of the ship and primarily one of consular adjustment. Where all of the parties, as here, are foreigners, the approved practice is to have the consul of such foreign country notified in order that he may make such objection as he may choose to the court taking jurisdiction. In this case the court did not require the consul to be notified in the regular way. Here it was deemed unnecessary, for the consul had unequivocal notice of the demands of the seamen and of the subsequent proceedings taken by libelants. In the absence of such protest in limine, the court exercised its discretion and took jurisdiction of the case. Not until the final hearing did the consul see fit to object to the court taking jurisdiction. This, too, after the jurisdiction had attached and the court had exercised its discretion.

Obviously the purpose of giving notice to the consul of disputes of this character is to facilitate speedy adjustments between the parties, and settle them according to the laws and regulations of the country to which the ship belongs. As citizens of the same country, it is good policy to refer the matters to their consular representative. But this practice has in view the speedy adjustment of the difficulty; and where the consul has remained passive and allowed one of the parties to depart the jurisdiction without adjustment, and the seamen are left behind to seek other employment in a foreign country, as is the present instance, in the opinion of the court furnishes the "special reason" for moving the court to take and retain jurisdiction of the case (The Belgenland, 114 U. S. 355, 5 Sup. Ct. 860, 29 L. Ed. 152), for to remit the parties, under such circumstances, to a foreign tribunal after long delay and untold inconvenience, would work hardship, if not ultimately a defeat of justice.

[3, 4] Such considerations will influence the federal courts in taking jurisdiction, and in such cases administering the law of the country to which the parties belong. The record has been examined carefully, and I am fully convinced that in each case the elements of desertion are clearly made out. Libelants insist upon irregularities in the proceedings necessary to have them legally logged as deserters. There is no merit to this contention. It would be utterly impracticable to read over an entry in a logbook to a deserter and to receive and enter his reply thereto. A "deserter" is one continually and intentionally absent from the ship, constituting a quitting of the service of the vessel. The facts here show an animus non revertendi.

Libelants attempt to justify their absence from the ship on the ground that they came ashore to assert a legal right, and tried to do so within a reasonable time. From the law and the facts of the case it is clear that libelants had no rights which could be successfully asserted at the time. If they assumed they were entitled to the benefits of the Seamen's Act and left the service of the Strathearn on that ground, and it thereafter developed that no such rights had accrued, they interpreted the law at their peril.

Counsel may prepare decrees dismissing the libels.