## THE LONDON.

### (District Court, E. D. Pennsylvania. January 9, 1917.)

### No. 45 of 1916.

SEAMEN ☞23—RIGHT TO WAGES—STATUTE—CONSTRUCTION—"HALF OF WHAT HAS BEEN EARNED."

Under the provisions of the La Follette Seaman Act March 4, 1915, c. 153, 38 Stat. 1164, that a seaman shall be entitled to receive one-half of' what he has earned at the time of demand for wages, notwithstanding an agreement that his wages are not to be paid until the end of the voyage, and that if the master refuses to pay the one-half demanded all then earned may be collected, when construed to effectuate the purposes of the act to give some protection to seamen without depriving the master of all control over them and of all means for enforcing loyalty to the ship, the amounts already paid to the seamen are to be deducted from the half of what has been earned which he is entitled to demand, not from the entire amount earned, since under the latter construction a seaman could, by successive demands, collect the entire amount due.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 118–122; Dec. Dig. ☞23.]

In Admiralty. Libel for wages by Jacob Nelleman and others against the steamship London. On trial hearing upon the libel, answer, and proofs. Libel dismissed.

David E. Finley, Jr., and Joseph Hill Brinton, both of Philadelphia, Pa., for libelant.

Bruce A. Metzger and Howard H. Yocum, both of Philadelphia, Pa., for respondent.

DICKINSON, District Judge. This case comes in effect, although not in form, as a case stated. The purpose is to have a construction put upon certain phrases used in the amendment to the Seamen's Act known as the La Follette Act. The question involved is whether, under that act in determining how much of the wages earned may be demanded as presently payable, the amount of payments made on wages is to be deducted from the amount of wages earned, or from the one-half of the amount earned which is made presently payable. A supposititious case will illustrate in the concrete the different result reached by the adoption of the one method of figuring, or the other. Take the case of a sailor who earns for instance $1 per day, or $30 per month, none of which under the shipping articles is payable until the end of the voyage. He has earned on, say, January 1st, $90. He asks for and is paid $45. On January 6th (five days later) he makes another demand. How much, under the La Follette Act, is payable? Under the respondent's construction, the amount is $2.50;

under the libelant's, it is $25. These widely different results flow from the different method of figuring. The respondent takes the amount earned as $95 and the one-half demandable as $47.50, from which is deducted $45, the amount paid, striking the balance of $2.50. The libelant takes the same amount earned $95, and deducts from it $45, the same amount paid, and strikes a balance of $50 as the balance due and gets the result of $25 as the one-half presently demandable.

The sole question before us is: Which of these two methods is in accord with the act of Congress? All other questions have been eliminated to have this one ruled. There is no question of advancements (as distinguished from payments on account of wages earned) and no question of jurisdiction raised, and there is no dispute over the facts. The claim of one of the libelants may be taken as typical, of all. He had earned $60.48 and had been paid $37.53. His claim is that he demanded as his right $11.47, the one-half of $22.95, the balance of what he had earned, and, as payment was refused, the whole, $22.95, has become payable under the provisions of the act of Congress. The respondent answers that the sum demandable was $30.24, the one-half of $60.48, the amount earned, and, as more than this had been paid on the wages earned, the ship's master was justified in refusing to pay more, and that no libel would lie for the balance of wages earned but not yet payable.

If the libelants are right in their construction of the act, a decree should be entered for the balance of the earned wages. If they are not right, the libel should be dismissed. It is, of course, obvious that the practical effect of the construction given to the act of Congress by the libelants is to make all the earned wages demandable. The act gives the right to recover all only when payment of half is refused. It also recognizes the right of the master to retain one-half the earned wages to assure fidelity to the shipping articles and loyalty to the ship's service until the end of the voyage. A construction which is destructive of these main purposes of the act would, by its mere statement, forestall discussion. The earnestness, however, with which the argument in its favor has been pressed and the traditional guardianship relation to sailors, which courts of admiralty assume, as well as the highly commendable purposes of the La Follette Act, move us to a fuller expression of the reasons for the finding now made. The act has a general police and remedial purpose which makes a strong appeal for a liberal construction in advancement of the ends in view. The law evinces, along with a recognition of the urgent need of a remedy for existing abuses, an appreciation of the practical limitations of the general subject. Without adverting to other features, these two phases of the subject-matter of the legislation were in mind. One was the necessity of protection to seamen, who might be brought on board ship under conditions which made them helpless to protect themselves, and held them for the duration of a long voyage with their claim for future wages already depleted and the payment of whatever might be coming to them tied up for an extended period of time. The helplessness of people thus situated is appealing, and this

act was intended to afford relief. Certainly no one would wish to be a party to the withholding of any relief which has thus become the legal right of seamen. On the other hand, the great value which overseas commerce has to every nation and the necessity for the maintenance of proper discipline aboard ship, and to assure, as well as encourage, loyalty to the ship and to its service for its protection, all demand that some means of control over the ship's crew and some measure of command over their services must be given to the master.

The provisions of this act, or some of them, are necessarily drastic. The one we are now considering compels the master to pay at least half the wages earned long before the time when, by the agreement of the parties, any are payable under pain of a penalty for refusal of being obliged to pay all. The act made what was thought to be the best adjustment of all the difficulties which the situation presents by extending relief to the seamen by giving them one-half of their earnings and leaving to the master one-half of the means of control given by the shipping articles. We think this to be the fair construction of the act. It first gives the seamen the right to demand one-half of the wages earned. What follows is intended to provide them with the means of enforcing the right given. No phraseology used in describing the means should therefore be held to expand the right unless clearly intended and plainly expressed. We find such enlargement not to have been expressed—and most certainly not intended. The effect of the construction asked to be given to these later provisions of the act, as already stated, is to enlarge the demand for wages from half to all. The act does, indeed, give the right to all; but this is only in case the master refuses to pay half. If the seamen were, in the first place, entitled to demand all, why give them the right to demand all only in case of a refusal? This very provision is a denial of the construction sought to be given to the act. The common sense and sense of justice of any one upon whom such a construction of the law was attempted to be forced would be so outraged that there would be provoked a feeling of irritation and resentment which the average vessel owner and master could not suppress, and this would defeat their co-operation in accomplishing through this act the very worthy end which its framers had in view.

The construction we have given to the act is in accord with all the cases to which we have been referred, although the special features upon which emphasis was placed in the other cases are not here present. The Ixion, 237 Fed. 142, ruled in the Northern Division of the Western District of Washington; The Jacob N. Haskell (D. C.) 235 Fed. 914.

The libel is dismissed.