## THE LONDON.

(Circuit Court of Appeals, Third Circuit. April 26, 1917.)

### No. 2224.

SEAMEN ⬤⟶24—WAGES—PART PAYMENT AT INTERMEDIATE PORTS—CONSTRUCTION OF STATUTE.

Under Seamen's Act March 4, 1915, c. 153, § 4, 38 Stat. 1165 (Comp. St. 1916, § 8322), which provides that at every port where a vessel, after the voyage has been commenced, shall load or deliver cargo before the voyage is ended, a seaman shall be entitled to payment of "one-half part of the wages which he shall have then earned," against the one-half part

which he can then demand there must be charged all prior payments he has received.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 123–128.]

Appeal from the District Court of the United States for the East-·ern District of Pennsylvania; Oliver B. Dickinson, Judge.

Suit in admiralty by Jacob Nellemenn and Michael Jorgensen against the steamship London; Christian Larsen, master. Decree for respondent, and libelants appeal. Dismissed.

For opinion below, see 238 Fed. 645.

D. E. Finley, Jr., and Joseph Hill Brinton, both of Philadelphia, Pa., for appellants.

Howard H. Yocum and Bruce A. Metzger, both of Philadelphia, Pa., for appellee.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

· BUFFINGTON, Circuit Judge. In the court below, Jacob Nellemenn and Michael Jorgensen filed a libel against the steamship London for wages as firemen. On hearing, the court below, in an opinion reported in 238 Fed. 645, held they had shown no cause of ac-·tion. From a decree dismissing the libel, this appeal was taken.

The case was heard on an agreed statement of facts, which showed that the wages then earned by Nellemenn as fireman when the London arrived at the port of Philadelphia, a port of call in the voyage for which Nellemenn had contracted, were $60.48. On account of such then earned wages Nellemenn had been already paid $37.53, thus leaving $22.95 in the hands of the master when the vessel reached Philadelphia. On arriving there, Nellemenn demanded that one-half of . said $22.95, to wit, $11.47, be paid him. If this demand had been complied with, the net result would have been that Nellemenn would have received $49 or approximately five-sixths of the wages he had earned up to that time, and the London would have retained $10.48, approximately one-sixth of the wages he had earned up to that time.

Such being the facts, the question here involved is whether Nellemenn's demand was justified by section 4 of the act of Congress of March 4, 1915, quoted in the margin.[1] That act provides for the

[1] "Every seaman on a vessel of the United States shall be entitled to re-·ceive on demand from the master of the vessel to which he belongs one-half part of the wages which he shall have then earned at every port where such vessel, after the voyage has been commenced, shall load or deliver cargo before the voyage is ended and all stipulations in the contract to the contrary ·shall be void: Provided, such a demand shall not be made before the expiration of, nor oftener than once in five days. Any failure on the part of the master to comply with this demand shall release the seaman from his contract .and he shall be entitled to full payment of wages earned. And when the voyage is ended every such seaman shall be entitled to the remainder of the wages which shall then be due him, as provided in section forty-five hundred .and twenty-nine of the Revised Statutes: Provided further, that notwithstanding any release signed by any seaman under section forty-five hundred and fifty-two of the Revised Statutes any court having jurisdiction may upon ·good cause shown set aside such release and take such action as justice shall require: And provided further, that this section shall apply to seamen on foreign vessels while in harbors of the United States, and the courts of the ·United States shall be open to such seamen for its enforcement."

payment, during the voyage, at times and places therein specified, of certain parts of the seamen's then earned wages. The basis of payment provided by the statute is "the wages which he shall have then earned"; the proportion payable is "one-half part of the wages which he shall have then earned"; the time of payment, "at every port where such vessel, after the voyage has been commenced, shall load or deliver cargo before the voyage is ended." Considering this statute as a whole and these several provisions separately, and taking the words used in their common and ordinary meaning, we construe it to mean that, when a vessel arrives at any port of loading, or discharge, the seaman is then entitled to be paid one-half of the wages he has up to that time earned, and that against such one-half, which he can demand, there must be charged all prior payments he has received. We think this is the plain, workable, and equitable construction of the act.

In adopting half payment to the seaman during the voyage and half retention by the ship until the voyage was over, Congress gave a substantial portion of earned wages to the seaman while he was earning them, and retained a substantial portion of the earned wages in the hands of the master as security that the seaman would stick by the ship until the voyage, for which both ship and seaman had contracted, was ended. This half and half division of wages earned to any time when payment is to be made is workable, is equitable, and is clearly stated in the act, and to our mind was what Congress had in view in the statute.

It follows from this that, when Nellemenn made his demand at Philadelphia, he had already been then overpaid the statutory one-half of the wages he had then earned. He was not, therefore, entitled to demand any further payment at that time, and, as he then unwarrantably deserted the ship, he forfeited the wages then unpaid, and the libel of himself and his fellow libelant, who made a like unwarranted demand, will be dismissed at their cost.