THE TALUS.

(District Court, S. D. Alabama.    May 26, 1917.)

No. 1642.

1. SEAMEN ⟶24—WAGES—PART PAYMENT AT INTERMEDIATE PORTS—CONSTRUCTION OF STATUTE.

Under Rev. St. § 4530, as amended by Seaman's Act March 4, 1915, c. 153, § 4, 38 Stat. 1165 (Comp. St. 1916, § 8322), a seaman on either a domestic or foreign vessel, who has rendered at least five days' service, has the right to demand at each port of the United States where the vessel loads or delivers cargo one-half the wages he shall at the time of the demand have earned since he signed, or since the last previous payment under the act, provided at least five days have elapsed since such payment, and it is not necessary that the vessel shall have been in that port for five days before the demand may be made.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 123–128.]

2. SEAMEN ⟶3—WAGES—LAW GOVERNING PAYMENT.

The rights of a seaman in the courts of the United States are governed by such act, and not by the law of the flag of the vessel on which he is serving.

3. SEAMEN ⟶20—WAGES—PART PAYMENT AT INTERMEDIATE PORTS—CONSTRUCTION OF STATUTE.

Under such provision, which is expressly made applicable to seamen of foreign vessels in ports of the United States, construed in connection with Act March 4, 1915, c. 153, § 11, 38 Stat. 1164, 1168, which also re-enacts and amends Dingley Act June 26, 1884, c. 121, § 10a, 23 Stat. 55 (Comp. St. 1916, § 8323), as amended by act Dec. 21, 1898, c. 28, § 24, 30 Stat. 763, making it unlawful in any case to pay any seaman wages in advance, and providing that the payment of advance wages shall in no case absolve the vessel, master, or owner from the payment of full wages after the same shall have been actually earned, the amount of any advance payment, although made in a foreign country, where it was lawful, cannot be deducted from the wages earned, and to which the seaman is entitled to half payment.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 86–91.]

In Admiralty. Suit by Erik Sandberg and others against the British ship Talus. Decree for certain libelants, and against others.

Alex Howard, of Mobile, Ala., for libelants.

Jos. N. McAleer and Jas. H. Kirkpatrick, both of Mobile, Ala., for claimant.

ERVIN, District Judge. The libel in this case was filed by the seamen, claiming one-half part of the wages which they had earned up to the time of their demand for such part of their wages. It appears that the libelants were shipped as seamen aboard the British ship Talus in Liverpool, England, and began their services about the 1st of December, 1916; that the vessel arrived in this port on February 11th, and the men were paid some money on account of their wages; that about the 22d day of February, 1917, libelants, in the port of Mobile, demanded one-half part of the wages which they had then earned, and this demand was refused by the master of the Talus, he claiming that the libelants had been paid more than one-half part

of the wages then earned by them, because there had been advanced to the libelants certain sums when they signed in England.

The question, therefore, is the same one presented and ruled on by me in the case of Koskeimer v. The Imberhorne (D. C.) 240 Fed. 830, in which case I held that, under the provisions of the Seaman's Act, the vessel could not charge against the one-half part of the wages earned by the sailor an advance made in England at the time of the sailor's being signed.

[1] I am now asked to reconsider by conclusion reached in the Imberhorne Case, and it is urged upon me that, under the provisions of section 4530 of the Seaman's Act, the only part of the wages which the seaman, shipped in a foreign country, is entitled to demand in this country of a foreign vessel, is one-half part of such wages as may have been earned after such foreign vessel reaches her port in this country. The various admiralty courts in this country have had presented to them for consideration many phases of the Seaman's Act, and it is natural that there has been some difference of opinion in its construction.

In the case of the Strathearn (D. C.) 239 Fed. 583, the libel was dismissed by the judge, because he held the demand for wages was made by the seamen before they had been five days in the port of Pensacola. This holding is along the same line as the contention that is now urged upon me, but I cannot agree to that contention. The whole question depends, of course, upon the proper construction of the terms of the Seaman's Act, as found in 38 Statutes at Large, 1164, which reads as follows:

"Sec. 4530. Every seaman on a vessel of the United States shall be entitled to receive on demand, from the master of the vessel to which he belongs, one-half part of the *wages which he shall have then earned* at every port where such vessel, after the voyage has been commenced, shall load or deliver cargo before the voyage is ended, and all stipulations in the contract to the contrary shall be void: Provided, such a demand shall not be made before the expiration of, nor oftener than once in five days. Any failure on the part of the master to comply with this demand shall release the seaman from his contract, and he shall be entitled to full payment of wages earned. * * * And provided further, that this section shall apply to seamen on foreign vessels while in harbors of the United States, and the courts of the United States shall be open to such seamen for its enforcement." (Italics mine.)

"Sec. 10 (a). That it shall be, and is hereby, made unlawful in any case to pay any seaman wages in advance of the time when he has actually earned the same, or to pay such advance wages, or to make any order, or note, or other evidence of indebtedness therefor to any other person, or to pay any person, for the shipment of seamen when payment is deducted or to be deducted from a seaman's wages. Any person violating any of the foregoing provisions of this section, shall be deemed guilty of a misdemeanor and upon conviction shall be punished by a fine of not less than $25.00 nor more than $100.00, and may also be imprisoned for a period of not exceeding six months, at the discretion of the court. The payment of such advance wages or allotment shall in no case, except as herein provided, absolve the vessel or the master or the owner thereof from the full payment of wages after the same shall have been actually earned, and shall be no defense to a libel suit or action for the recovery of such wages."

Let us now analyze the language of this act. It will be noted in the first place that the act does not give to the seaman one-half part of

such wages as he may earn in every port where such vessel shall load or deliver cargo. The language is that he shall be entitled to receive on demand one-half part of the wages which he shall have *then earned.* If it had been intended to give to the seaman only a half of such wages as he should earn in each port where the vessel receives or delivers cargo, the language would have been entirely different, and, instead of saying the seaman was entitled to one-half part of the wages which he shall have then earned, it would have provided that he was entitled to receive one-half part of such wages as he may earn in any port where such vessel received or delivered cargo.

The use of the expression "one-half of the wages which he shall *have then earned*" can only indicate that it was the intention of Congress to give seamen the right to demand one-half of all the wages which such seamen shall have then earned at the time of the demand made. I grant that there is some confusion in the way the act is worded, because of the placing of the words "at every port where such vessel, after the voyage has been commenced, shall load or deliver cargo before the voyage is ended." It is hard to word a statute so as to make its provisions absolutely plain and simple and avoid more than one construction, and, in wording a statute, words are sometimes put into it in a parenthetic way in a part of a sentence which makes confusion, when they could have been transposed so as to make the meaning more clear.

My own idea is that the words "at every port where such vessel, after the voyage has been commenced, shall load or deliver cargo," were intended to designate the places at which the seamen would have the right to *demand their wages,* and were not intended to indicate the place at which such wages *were earned by the seamen.* Omitting certain of the words for the purpose of making my construction of the statute clear, I rearrange the terms of this part of the act so as to express my conclusion as to its meaning, and as so rearranged it would read as follows:

"A seaman shall be entitled to receive on demand, at each port where such vessel shall load or deliver cargo, one-half part of the wages which he shall have then earned: Provided, such demand shall not be made before the expiration of, and not oftener than once in, five days."

Again, the whole act must be construed together, in order to determine the meaning of any portions thereof, which may be doubtful, if construed alone. In section 10(a) I find the following provisions:

"The payment of such advance wages or allotment shall not in any case, except as hereafter provided, absolve the vessel, or the master, or the owner thereof from the *full payment* of wages after the same shall have been actually earned, and shall be no defense to a libel suit or action for the recovery of such wages."

The reference here about the full payment of wages, "after the same shall have been actually earned," it seems to me, shows that the words used in section 4530 necessarily have reference to the total wages earned at the time the demand is made, and not to such

wages as may be earned by the seaman after the vessel arrives in a port of this country for the purpose of loading or discharging cargo. I therefore hold that the act gives to every seaman the right to demand from the vessel at each port where such vessel, during her voyage, loads or delivers cargo, one-half of such wages as the seaman shall, at the time of such demand, have earned; that such seaman cannot demand any wages until at least five days' service has been rendered; that he cannot thereafter again demand the half part of such wages as may be subsequently earned until five days have elapsed from the last or prior payment of one-half his wages.

I do not think that the vessel must be in port five days before the seaman can make his demand, provided there has been five days or more of service by the sailor since he signed. I think the words, "Provided, such demand shall not be made before the expiration of, nor oftener than once in, five days," mean shall not be made before the expiration of five days of service, during which wages were earned, and not oftener than once in each five days thereafter. The Jacob N. Haskell (D. C.) 235 Fed. 914; The London (D. C.) 238 Fed. 645.

[2] The rights of a seaman in this country are controlled by this act, and not by the flag of the vessel on which he is serving. The Ixion (D. C.) 237 Fed. 142.

[3] As I am asked to review the conclusion I reached in the Imberhorne Case, and after considering the matter, I still think the conclusion there reached was correct, and as this case may be taken up, and that one was not, I here refer to the portions of my opinion in the Imberhorne Case which set out my views as to the reasons advances made by a foreign ship in a foreign port to the sailors when there signed, cannot be allowed when the sailor here claims the half part of such wages as he may have earned when he reaches this port. See 240 Fed. 831–834.

Upon considering the evidence as to the amounts earned by each of the libelants and the amounts paid them, exclusive of the advances made at the time of shipment, I find that Magnus Persson and Andreas Evanger had, at the time of making their demand for one-half of their wages on February 22, 1917, been already paid more than the one-half of their wages earned up to that time, so that they were not entitled, at that time, to demand anything of the vessel. As the demand in each of these cases was not justified, and as each of these seamen abandoned the vessel when further payment to them was refused, I find that they have deserted the vessel, and are not entitled to receive anything from the vessel, so that the libel is hereby dismissed as to Magnus Persson and Andreas Evanger.

As to Erik Sandberg, I find that this man, at the time he made his demand on February 22, 1917, had earned $90.85; that he had been paid $37.34; that there was coming to him $8.09. I find that the captain of the vessel refused to pay him anything on account of his wages, because the vessel had advanced him, at the time of signing, $19. I therefore find that the vessel wrongfully refused to pay him, and that under the terms of the act he is entitled to his discharge, and to all

of the balance of the wages then earned by him, which amount to $53.51, exclusive of the $19 advanced to him.

As to Carl Jannson, I find that, at the time he made his demand for one-half of his wages on February 22, 1917, he had earned $90.85; that there had been paid to him by the vessel $39.49; that there was then due him $5.94 as a balance of the one-half of wages then due him. I further find that, when he made his demand on February 22, 1917, the captain of the vessel refused to pay him anything, because the vessel had advanced to him at the time he signed, $9.50. I therefore find that the vessel wrongfully refused to pay him, and that under the terms of the act he is entitled to his discharge, and to all of the balance of the wages then earned by him, which amount to $51.36, exclusive of the $9.50 advanced to him.

As to S. K. Benjaminsen, I find that, at the time he made his demand for one-half of his wages on February 22, 1917, he had earned $90.10; that there had been then paid to him by the vessel $26.19; that there was then due him $18.86 as a balance of the one-half of wages then due him. I further find that, when he made his demand on February 22, 1917, the captain of the vessel refused to pay him anything, because the vessel had advanced to him, at the time he signed, $28.50. I therefore find that the vessel wrongfully refused to pay him, and that under the terms of the act he is entitled to his discharge, and to all of the balance of the wages then earned by him, which amount to $63.91, exclusive of the $28.50 advanced to him.

As to John Perannen, I find that, at the time he made his demand for one-half of his wages on February 22, 1917, he had earned $201.40; that there had been then paid to him by the vessel $78.23; that there was then due him as a balance of one-half of the wages due him $21.47; I further find that, when he made his demand on February 22, 1917, the captain of the vessel refused to pay him anything, because the vessel had advanced to him, at the time he signed, $52.25. I therefore find that the vessel wrongfully refused to pay him, and that under the terms of the act he is entitled to his discharge, and to all of the balance of the wages then earned by him, which amount to $123.17, exclusive of the $52.25 advanced to him.

As to Erik Sandberg, Carl Jannson, S. K. Benjaminsen, and John Perannen, they are hereby discharged from the steamship Talus, and decrees will be entered in their behalf against said vessel for the amounts found due them.