### THE RATHLIN HEAD.*

#### SANDREN et al. v. ULSTER S. S. CO., Limited.

(Circuit Court of Appeals, Fifth Circuit. January 20, 1920.)

#### No. 3413.

SEAMEN ⬅24—AMOUNT OF WAGES DEMANDABLE AT INTERMEDIATE PORTS; "ONE-HALF PART OF THE WAGES WHICH HE SHALL HAVE THEN EARNED."

Under Seamen's Act March 4, 1915, § 4 (Comp. St. § 8322), which gives a seaman the right to demand and receive at intermediate ports "one-half part of the wages which he shall have then earned," the amount to which he is entitled is one-half his gross earnings during the voyage to that time, less all prior payments.

Appeal from the District Court of the United States for the Eastern District of Louisiana; Rufus E. Foster, Judge.

Suit in admiralty by Karl Sandren and others against the steamship Rathlin Head; the Ulster Steamship Company, Limited, claimant. Decree for claimant, and libelants appeal. Affirmed.

W. J. Waguespack and Herbert W. Waguespack, both of New Orleans, La., for appellants.

Terriberry, Rice & Young, of New Orleans, La., for appellee.

Before WALKER, Circuit Judge, and GRUBB and JACK, District Judges.

GRUBB, District Judge. The appeal presents a single question involving the construction of section 4 of the Seamen's Act. Act March 4, 1915, 38 Stat. 1165 (Comp. St. § 8322). The applicable part of that section is as follows:

"Every seaman on a vessel of the United States shall be entitled to receive on demand from the master of the vessel to which he belongs, one-half of the part of the wages which he shall have then earned at every port where such vessel, after the voyage has been commenced, shall load or deliver cargo before the voyage is ended."

The question presented is as to the proper method of computing the amount payable to seamen, at intermediate ports under this section, in cases in which previous payments or advances have been made. Appellants contend that from the total wages earned from the commencement of the voyage to the date of demand there should first be

deducted all advances and payments; one-half of the remainder being the amount payable. The appellee contends, and the District Judge held, that the total wages should first be divided in two, and from the quotient should be deducted all advances and previous payments; the remainder, if any, being the amount demandable by the seaman.

There has been diversity of opinion among the District Courts as to which method is the proper one. The cases of The Ixion, 237 Fed. 142, and In re Ivertsen, 237 Fed. 498, hold in line with the contention of appellants. The cases of The Jacob N. Haskell, 235 Fed. 914, The London, 238 Fed. 645, The Delagoa, 244 Fed. 835, The Meteor, 241 Fed. 735, and The Thor, 248 Fed. 942, support the contention of the appellee. The case of The London, 238 Fed. 645, was affirmed by the Circuit Court of Appeals for the Third Circuit in an opinion reported in 241 Fed. 863, 154 C. C. A. 565, and a certiorari to the decree of the Circuit Court of Appeals was denied by the Supreme Court, 245 U. S. 652, 38 Sup. Ct. 11, 62 L. Ed. .532. In the case of Sandberg v. McDonald, Claimant of the Talus, 248 U. S. 185, 39 Sup. Ct. 84, 63 L. Ed. 200, the Supreme Court impliedly recognized the correctness of the method adopted by the District Judge in this case. The statement of facts contained in the opinion of the Supreme Court in that case recites that—

"The master then paid to them [the demanding seamen] a sum which, with the cash paid them and the price of the articles purchased as stated above, together with the advances made in Liverpool, equaled or exceeded the one-half of the wages then earned by each of them from the commencement of his service for the ship."

While the adequacy of the payment was questioned in that case on a different ground—i. e., the alleged invalidity of advances made to the seamen in Liverpool—the payments would have been insufficient (granting the present contention of appellants to be correct), even after the allowance of the Liverpool advances, and the Supreme Court, by its affirmance of the decree dismissing the libel, in view of the language quoted, in effect approved the method of computing the half wages demandable under the statute, which was adopted in that case in the court below, and which was that adopted in the District Court in this case.

The "one-half part of the wages which he shall have then earned" is literally one-half of the wages earned by the seaman to the date of demand, without deductions. The language of the act places emphasis upon wages earned, and not upon amounts due when demand is made. The statute does not concern itself with what is due as upon a partial or final settlement, but requires the payment of an amount proportioned upon earnings rather than upon balances due. While the statute does not expressly say that wages theretofore paid shall be taken into consideration in the computation, the absurdity of a contrary construction is enough to warrant the implication that they are to be considered. If the ascertainment, required by the act, was of the amount owing on a settlement, the ordinary method of computation would be to first deduct from gross earnings previous payments and allow one-half of the residue. But the statute says "one-half part of the wages which he shall have then earned." His gross earnings or total wages

must therefore be divided in two, in order to arrive at "one-half part of the wages which he shall have then earned," which is what the statute read literally accords him the right to demand. The implied condition to the demand is that he shall not have already received the whole or any part of the wages demanded. Otherwise, a double payment would result, and the act will not be construed so as to produce such an inequitable result. The implied condition makes it necessary to deduct from the half earnings, when so ascertained, all previous payments. The remainder is what the seaman is entitled to demand. The evident aim of Congress was to provide that the seaman should be entitled, pending the termination of the voyage, to demand and receive at intermediate ports of loading or unloading, with five-day intervals, a sum equal to one-half of his then earnings, when there was added to it all previous payments, and that the master should retain until the termination of the voyage the remaining half of the seaman's wages as an assurance against desertion.

It is urged by appellants that reference to the earlier laws, of which section 4 of the present Seamen's Act was merely amendatory, is persuasive of their contention. Section 4530 of the Revised Statutes and section 5 of the act of December 21, 1898 (30 Stat. 756), both use the word "due," instead of the word "earned." It is contended that the purpose of the substitution was merely to avoid the effect of seamen's articles, which postponed the maturing of wages until the termination of the voyage, and that it should not be given a wider meaning; i. e., that of making a change in the method of computation from that which obtained under the earlier laws and which was unfavorable to the seamen, since the Seamen's Act of March 4, 1915, was enacted in the interest of the seaman rather than that of the shipowner. We are referred to no cases construing the earlier laws as contended for, or citing any such practice as obtaining under them, and have found none. The District Judge in the opinion in the case of In re Ivertsen, supra, assumed without citation of authority that the method that prevailed under the earlier laws was that which is here contended for by appellants. Conceding, without deciding, that the sole purpose of Congress in changing the word "due" to the word "earned" was that stated, still, unless the method of computation contended for by the appellants is shown to have been the prevalent one under the earlier laws, the argument advanced fails, for in that event no change in language in the amended law was needed to give it the construction given it in the court below.

Our conclusion is that the weight of authority and of reason is persuasive that Congress intended to provide by section 4 of the Seamen's Act of 1915, that the half of a seaman's wages should remain in the hands of the master until the voyage was ended, as a security against his leaving the ship, and that the seaman should be entitled to receive only a sum, which at the time demanded would represent one-half of his then earned wages, when there was added to it the total of all previous advances and payments.

The decree of the District Court dismissing the libel is therefore affirmed.