### LOW LING SING et al. v. STANDARD TRANSP. CO., Limited.

(District Court, S. D. New York. May 2, 1921.)

1. **Statutes ⬤190—Construed according to actual words used, where unambiguous.**

   In the construction of statutes, the actual words used must prevail, so far as they may bear only one meaning.

2. **Seamen ⬤24—Entitled on demand to one-half of wages earned and still due under statute entitling them to one-half of wages "earned."**

   Under Rev. St. § 4530, as amended in 1915 (Comp. St. § 8322), entitling seaman, on arrival at port in United States, to "one-half of the wages which he shall have earned," on demand from master, seamen are entitled on such demand to one-half of the wages earned and still due them, and not merely to one-half of the total wages earned since the voyage began, in view of the legislative history of such statute.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Earn.]

In Admiralty. Libel in personam by Low Ling Sing and others against the Standard Transportation Company, Limited, for seamen's wages. Decree for libelants.

The libelants were members of a crew shipping at Calcutta or Bombay for a voyage to New York and return upon the steamship Wabasha, flying the British flag. At New York they demanded half the wages earned and still due them. under Revised Statutes, § 4530 (Comp. St. § 8322), which were refused. Theretofore they had received one-half the total wages earned since the voyage began. If they were entitled to half the wages earned and still unpaid, their demand was justified, and they should, because of the refusal, recover full wages. If they were entitled to demand only half the sum of the total wages earned, including what had been paid and what remained unpaid, their demand was not justified.

Silas B. Axtell, of New York City, for libelants.
Courtland Palmer, of New York City, for respondent.

LEARNED HAND, District Judge (after stating the facts as above). This question has been many times before the courts, and there is only one decision in favor of the libelants. The Ixion (D. C.) 237 Fed. 142. In re Ivertson (D. C.) 237 Fed. 498, contains an express dictum in accord, but it was clearly obiter and cannot rank as a decision. Contrary are a decision of the Circuit Court of Appeals for the Fifth Circuit, The Rathlin Head, 262 Fed. 751, and another of the Third Circuit. The London, 241 Fed. 863, 154 C. C. A. 565. In addition there are four decisions of District Judges. The Thor, 248

Fed. 942 (Judge Dooling); The Meteor, 241 Fed. 735 (Judge Ervin); The Jacob N. Haskell, 235 Fed. 914 (Judge Sheppard); and The Delagoa, 244 Fed. 835 (Judge Chatfield). Judge Sheppard and Judge Chatfield made the same rulings, also, in The Strathearn, 239 Fed. 583, and The Clematis, 244 Fed. 484. Furthermore, in The Talus, 248 U. S. 185, 39 Sup. Ct. 84, 63 L. Ed. 200, the mode of calculating wages was that adopted by the ship here. It was in fact held valid, and that is urged as authoritative. Nevertheless, the only point before the Supreme Court, and the only one upon which the decision can be said to be an authority, is that advances in foreign ports were lawful. The Supreme Court cannot be said to have even remotely indicated any actual opinion upon the issue now at bar. It will thus be seen that, although there is no decision positively binding upon me, the great weight of authority favors the respondent.

Before the amendment to Revised Statutes, § 4530, of 1915, the law was clearly the other way. Between 1898 and 1915 the sentence read:

"Every seaman on a vessel of the United States shall be entitled to receive from the master of the vessel to which he belongs one-half part of the wages which shall be due him at every port where such vessel * * * shall load or deliver cargo."

From 1790 to 1898, it was verbatim the same, except that he was entitled only to one-third, instead of one-half. In 1915 the words "which shall be due him" were changed to "which he shall have then earned," and there was added to the sentence the clause, "and all stipulations in the contract to the contrary shall be void." If the section had been enacted for the first time in 1915, I should have little question that the interpretation laid down in The Rathlin Head, supra, and The London, supra, was the only possible one. However, it had been possible to make the law a dead letter before 1915 by inserting stipulations in the articles that no wages should be "due" till the voyage was completed, and this was conceivably the reason for the concluding phrase in the sentence. The question is whether, having strengthened the statute by that phrase, I should assume that Congress meant to weaken the substance and purpose of it in changing the word "due" to the word "earned."

Under the earlier forms, no wages were "due" if the articles said they should not be. If the word "due" had been left, and the concluding clause added, while I should personally have held that the wages would be "due," notwithstanding contrary provisions in the articles (then rendered void by the concluding phrase), still it is easy to see that the sentence as a whole might have been thought to be inconsistent with itself, and in the interests of clarity it might have been supposed "earned" would remove any ambiguity. This is sufficient to account for the change in phraseology, and the whole legislation of which this amendment is a part very effectually precludes the idea that seamen were to have less rights than before.

The bill was under discussion before Congress and the country three

years and both the majority and minority (certainly the minority) of the committee on merchant marine in their reports of May 2, 1912 (Report 645, 62d Congress, 2d Session), appeared to assume that the section in this respect was unchanged. Such reports have been recently treated as of much importance in determining the meaning of a statute. Duplex Printing Press Co. v. Deering, 254 U. S. 443, 41 Sup. Ct. 172, 65 L. Ed. —— (Supreme Court, January 3, 1921). The same interpretation was assumed in the Senate debates and in committee hearings.

[1, 2] Moreover, in June, 1920 (41 Stat. 1006), the section was again amended, after all the decisions above cited had been passed, and Congress then made it clear even to redundancy that the purpose was the same as it certainly had been before 1915. I have been unable to find any case which touches the precise situation, but it appears to me legitimate evidence of the original legislative intention, if, after certain courts have decided that a law has one of two possible interpretations, Congress at once changes its language to preclude the one adopted. Of course, like all canons of interpretation, the actual words used must prevail, so far as they may bear only one meaning, and, if that be the case here, there is no room for interpretation. The word "earned," however, does not to my mind necessarily shut out the meaning "earned and unpaid." It appears to me at least a debatable point whether the language was not as appropriate to that intention as to the one assumed by the cases cited. If so, the fact that Congress at once so declared when the matter was otherwise decided, ought not to be ignored.

Therefore, after a good deal of hesitation, and in view of the fact that there is no authoritative decision to the contrary, I have concluded that the intent of the amendment of 1915 was not to change the law in this respect. It follows that the libelants are entitled to a decree, but, in view of the uncertainty, without costs.

---

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes