THE BELGIER.

(District Court, S. D. New York. July 13, 1917.)

No. 313.

1. SEAMEN ⊙⟳21—SEAMEN'S ACT—WAGES.

Seamen signed in France for two years' service on a British steamship, at that time receiving an advance of one-half of a month's wages, which was legal under the British law. When the vessel arrived in New York, the seamen, who were afraid of submarines, demanded their full wages, which was refused by the master. Though the master refused them shore leave, they went ashore, and, having received legal advice, demanded one-half of their wages, which demand the master also refused. Thereupon the seamen libeled the vessel, claiming full wages under the Seamen's Act (Act March 4, 1915, c. 153, 38 Stat. 1165). *Held* that, though the Seamen's Act has abolished remedies for recapturing deserters and allows a seaman to recover full wages when his demand for one-half wages is not met, it does not entitle deserters to recover wages, where their demands were not in good faith and they intended to abandon their contract.

2. SEAMEN ⊙⟳23—ADVANCES—PAYMENTS.

While the Seamen's Act forbids advances, and provides that they shall not constitute payments on account, and declares that the section shall apply as well to foreign vessels while in the waters of the United States as to vessels of the United States, the advance by the master of the British vessel of one-half of the wages to the foreign seamen upon the signing of articles in a foreign port is binding, and must be credited to payments, such advance being legal under the British law, for it cannot be contemplated that the Seamen's Act was intended to apply to advances made upon foreign vessels outside of the United States, but only to advances made while such vessels were in the waters of the United States.

3. SEAMEN ⊙⟳23—ADVANCES—CONGRESS.

Congress has power to prohibit advances from wages to seamen while a foreign vessel is within an American port.

In Admiralty. Libel by Johanners H. Van Boyen and others against the steamship Belgier, her tackle, apparel, etc., claimed by A. W. Duckett & Co. Libel dismissed.

Silas B. Axtell, of New York City, for libelants.
Kirlin, Woolsey & Hickox, of New York City, for claimant.

AUGUSTUS N. HAND, District Judge. The libelants, Van Boyen and De Pauw signed on the 10th of January, 1916, and Anderson and Amundson on the 12th of January, 1916, as part of crew of the British ship Belgier. The articles were signed at Havre, France, for a service of two years. Each seaman received at the time an advance of one-half a month's wages, which was legal under the British law. They allege that they demanded one-half their wages when the ship was in New York, that this demand was refused, and they claim their full wages and the reasonable value of their clothing on board ship, without any

deduction for the advance of one-half month's wages paid them at Havre.

[1] The first question which arises is whether the seamen were entitled to any wages when they made the alleged demand. Van Boyen admitted that he asked the captain for shore leave and was refused. He said the reason he wanted to leave the vessel was because he was afraid of submarines. He also said he asked the captain to pay him off and that he afterwards asked the captain to pay him half wages. On cross-examination he was asked:

"Q. * * * I think you said, you asked the captain to be paid off, and he refused? A. Yes, sir; Tuesday morning. Q. You didn't ask him, then, for half your wages? A. Not before the night, the same night, 6 o'clock; then I went back. I didn't know about it. * * * Q. You are a citizen of Holland? A. Yes, sir."

De Pauw went ashore and asked for full wages, which were refused; he then consulted the Legal Aid Society, as Van Boyen had done, and asked for half wages. Mr. Axtell, the counsel for all these men, said, when De Pauw's deposition was taken:

"I will concede that all these men * * * are anxious to leave the ship, legally or otherwise, at any and all times. These men came to the Legal Aid Society to find out if they could be paid off. They were advised to demand half their wages, and, if the demand was refused, they would become entitled to the whole sum."

Anderson testified as follows:

"I asked if he was willing to pay me off; he said, 'No;' then I asked, 'Are you willing to pay me off half my wages?' 'No,' he said; 'I won't pay a single man off;' and I asked for a doctor, a specialist. Q. You wanted to go back to the vessel again? A. No, sir. Q. Then you wanted your discharge; wanted to be paid off? A. Yes, sir. Q. You told the master you wanted to be paid off? A. No, sir; yes, the last day. Q. The last day you asked to be paid off? A. Tuesday. * * * Q. What did you say to the captain when you went there? A. I asked, first, if he won't pay me off; and he said, 'No;' then I said, 'No;' and I said, 'Then you pay me off, if I give you half my wages;' and he said, 'No; not a single one of you.'"

Amundson testified that he said to the captain:

"Say, 'You want to pay me off, Captain'; and he says, 'No.' 'I will give you half my pay if you do it.' He said, 'No; I will not pay anybody off.'"

Amundson further testified:

"Q. You want to leave the vessel, don't you? A. Yes; I do."

Robinson, the captain, testified that the men made no demand for half wages. He said that Van Boyen said he was frightened to go back; he was liable to be torpedoed; that was his reason for wanting to get paid off. Robinson also entered in the log that all the seamen went ashore without leave and swore to the entries.

I think these seamen were confused as to their legal rights and thought they could leave the vessel if they forfeited half their wages. While they may have stated this as their erroneous legal opinion, I be-

lieve they first demanded full wages, and, after seeking legal advice, very likely demanded half wages. If so, this would have been a foundation for their claim, if their demand had been made in good faith. It seems clear, however, from the depositions and the admission of their counsel, that they feared to continue their dangerous employment, were really deserting the ship, and only used the demand for half wages as a means of getting paid without performing their contracts. The libel must therefore be dismissed, because these men were engaged in deserting, and were not acting in good faith. The Seamen's Act has abolished remedies for recapturing deserters. It does not, however, enable men to collect wages by making demands for half wages which are part of a scheme to leave the ship. The offer of the seamen to forfeit the remaining half of their wages if they could secure the first half, and then their apparently unfounded claim of sickness, all indicate a concerted purpose and action to leave the ship without entire loss of wages.

[2, 3] Even if they had not been in the category of deserters their claims are equally without foundation, except in the case of Amundson. All the others had already received more than one-half their wages. The libelants insist that this was not so, unless the advance of one-half month's wages be credited to the payments, and say these advances should not be credited because advances are forbidden by the Seamen's Act and do not constitute payments on account. These advances, however, were made under a British contract for services on a British ship and are valid by British law. They were, moreover, not made in a port of the United States, but in France. Seamen's Act, § 11 (Comp. St. 1916, § 8323), provides in relation to such advances:

"That this section shall apply as well to foreign vessels while in waters of the United States as to vessels of the United States."

It is settled by the case of Patterson v. Bark Eudora, 190 U. S. 169, 23 Sup. Ct. 821, 47 L. Ed. 1002, that Congress has power to prohibit advances upon wages while a foreign vessel is within an American port, but only the clearest language of the statute could be regarded as extending the operation of it to advances made to seamen upon foreign vessels outside of the United States.

Judge Brown, in The State of Maine (D. C.) 22 Fed. 734, held that advances made in a foreign port to American seamen, who had shipped there on an American vessel were not forbidden by the act and were valid payments in our courts. I am inclined to agree with Judge Veeder, who has recently held in the unreported case of Nielsen v. Sailing Ship Rhine (D. C.) 244 Fed. 833, that the act covers such cases, and that such payments are invalid. Here, however, the vessel was foreign, the seamen were apparently foreign and the payments were valid by the foreign law. Judge Veeder said:

"I shall hold that the statutory provision in question applies to the situation presented here, and that the advances in issue, although made in a foreign port, having been made by vessels of the United States, were unlawful, and may be recovered by the seamen."

The act may well have been intended to cover advances by American vessels, even in foreign ports, and advances by foreign vessels in American ports without going so far as to embrace advances by foreign vessels in foreign ports. I am not inclined to the belief that Congress could not legislate in such a way as to affect such cases when the vessels entered our ports, but that it did so is not clear from the language of the statute and seems to me highly improbable. I do not think the argument that such legislation might be of general benefit to American shipping is sufficient to justify a construction so contrary to the ordinary purview of Congressional regulation.

The decision of Judge Erwin in the case of Koskiner v. The Ship Imberhorne (D. C.) 240 Fed. 830, is the only case which appears contrary to the views I have expressed. Judge Erwin said:

"The moment we concede that the seaman under this act is entitled to the payment of one-half of the wages he may have earned, then it seems to me that we must also concede that the other provision of the act which rejects the advance on the wages must also be in force, no matter where such advances may have been made."

I do not think such a result follows. The contract was valid where executed, and the advances made under it were valid where made. I find no inconsistency in holding that these advances should be respected, while at the same time the seamen should be entitled to half wages and other immunities granted by our laws while within our ports. Judge Neterer correctly held in The Ixion (D. C.) 237 Fed. 142, that the statute prohibits advances made upon wages earned on foreign vessels "while in the harbors of the United States or within the jurisdiction of the waters of the United States."

The libel is dismissed.