## THE PINNA.

(District Court, E. D. Louisiana. July 8, 1918.)

No. 15584.

1. SEAMEN ⬦➠24—WAGES—RIGHT IN GENERAL.

Under Seamen's Act, § 4, sailors are entitled to demand, at every American port, one-half of wages earned, but not one-half of wages due.

2. SEAMEN ⬦➠23—CONTRACTS FOR ADVANCES—VALIDITY.

Advances made in a foreign port to sailors on a foreign vessel, legal where made, are not unlawful under the Seamen's Act.

3. SEAMEN ⬦➠26—DEMAND FOR WAGES—GOOD FAITH.

Where sailors, after master of ship had informed them that he had no money to meet their demands, accepted his orders on a store and had their wants satisfied, their subsequent demand for wages when the snip was about to sail was not in good faith, and they cannot recover.

4. SEAMEN ⬦➠24—WAGES—PAYMENT.

The master of a ship is entitled to a reasonable time in which to comply with crew's demand for wages, and where he delays only a few hours in procuring the necessary funds he is well within his rights.

In Admiralty. Libel by Charles David and others against the steamship Pinna. Dismissed, except as to libelant named and another.

W. J. & H. W. Waguespack, of New Orleans, La., for libelants.

Terriberry, Rice & Young, of New Orleans, La., for claimant.

FOSTER, District Judge. This is a libel for double wages and transportation and subsistence by 14 members of the crew of the British steamship Pinna. The men were shipped in London for a voyage to the Gulf of Mexico and any ports between 65° N. L. and 58° S. L., and back to a final port of destination in the United Kingdom, not to exceed one year. They signed the usual British articles on November 26, 1916, at which time all received certain advances and some made allotments of pay.

The vessel touched at Port Arthur, Tex., on January 9, 1917, where she docked at 3 p. m., and subsequently loaded two tanks of oil as cargo. It was not contemplated the vessel would remain at Port Arthur more than 24 hours, and she in fact departed within that period. Shortly after the ship docked, the crew presented lists to the master, asking for various amounts, one or two wanting $5, one $15, and the rest $10 each. The master explained he had no money on

---

⬦➠For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

board, and it was too late to get it from the bank, but offered the men orders on the Gulf Refining Company's store on the dock in the amounts of $10 each. All accepted and were granted shore leave. On going ashore they used these orders for their purchases, but also came in touch with representatives of the sailors' union, who informed them the advances in London were illegal, and they were entitled to one-half of the pay due them on demand, and, if not paid, were entitled to quit and receive full pay. Early the next morning they again went to the master and demanded half their wages due. The captain again advised them he had not enough money on board to meet their demands, offered them each $5, and told them he would get more money from the bank as soon as possible. Libelants declined to wait, and went on shore without leave, and consulted a lawyer for the purpose of libeling the ship. The captain then went ashore and procured the money necessary to meet the demands of the crew. Some of them returned and took their belongings off the ship, but none of them afforded the master the opportunity to pay the wages. The ship then sailed for New Orleans at 1 p. m., without libelants and before any process was served. The captain logged all the libelants as deserters, but states in his testimony he did not consider Herbert Clark and Chas. David intended to desert. Clark followed the ship to New Orleans, but a substitute had been shipped. David had gone to consult a dentist. Libelants constituted three of their members a committee to represent them, which committee came to New Orleans and instituted this proceeding.

[1, 2] If the advances in England were lawful, and the orders on the commissary to the extent used are considered, all but two of the men had received more than one-half the amount earned by them at the time of their second demand in Beaumont, and in each instance the additional $5 offered was more than the balance they were entitled to. It has repeatedly been held that under section 4 of the Seamen's Act (Act March 4, 1915, c. 153, 38 Stat. 1164) sailors are entitled to demand in every American port one-half of the wages earned, but not one-half of the wages then due. This accords with my own views. It has also been held by the Circuit Court of Appeals for the Fifth Circuit that advances made in a foreign port to sailors on a foreign vessel, legal where made, are not unlawful under the Seamen's Act. The Talus, 248 Fed. 670, —— C. C. A. ——. That decision I am bound to follow.

[3] While these views would dispose of the case adversely to libelants, aside from them, however, there are other cogent reasons for so deciding. In making their requests for payment of wages, sailors are bound to act in good faith. The Belgier (D. C.) 246 Fed. 966. It is evident these men were not in good faith. They were not obliged to accept the orders on the commissary; but they did so, and their wants were satisfied. They had reason to know the captain had no funds on board, and their further demands the next morning, as the ship was about to sail, could have had no other object than to provoke a breach of their contract. Under such circumstances they should not recover.

[4] Furthermore, the master was not obliged to comply with their demands instantly. He was entitled to a reasonable time to do so, and when he expressed his desire to comply, and delayed only a few hours in procuring the necessary funds, he was well within his rights.

The master has testified he did not consider Herbert Clark and Chas. David as deserters; therefore they are entitled to recover the balance of wages due them. In all other respects the libel will be dismissed, at libelants' costs.