## THE PINNA.

(Circuit Court of Appeals, Fifth Circuit. January 31, 1919.)

No. 3306.

1. SEAMEN ☞24—DEMAND FOR HALF PAY AT INTERMEDIATE PORT—SUFFICIENCY OF COMPLIANCE.

Where, on demand by seamen on arrival at American port for payment of half their earned wages, the master stated that he did not have money and banks had closed, but offered them store orders, which they accepted and used in part, they could not thereafter dispute validity of payment pro tanto, nor put master in default, so as to entitle them to full payment and discharge without a further demand.

2. SEAMEN ☞24—DEMAND FOR HALF WAGES AT INTERMEDIATE PORT—TIME FOR COMPLIANCE.

The master of a vessel is entitled to reasonable time to prepare himself to comply with a demand by seamen for half of their wages under Seamen's Act, § 4 (Comp. St. § 8322).

3. SEAMEN ☞21—WAGES—FORFEITURE BY DESERTION.

Seamen, who demanded instant compliance with their demand for half their earned wages in an American port, and when the master obtained the money shortly afterward, while they were still on the vessel or wharf, refused to accept it and left the vessel, forfeited their wages as deserters.

Appeal from the District Court of the United States for the Eastern District of Louisiana; Rufus E. Foster, Judge.

Suit in admiralty by H. Olsen and others against the steamship Pinna; Lane & McAndrew, Limited, claimant. Decree for claimant, and libelants appeal. Affirmed.

For opinion below, see 252 Fed. 203.

W. J. Waguespack and Herbert W. Waguespack, both of New Orleans, La., for appellants.

W. W. Young, of New Orleans, La. (Terriberry, Rice & Young, of New Orleans, La., on the brief), for appellee.

Before WALKER and BATTS, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge. This is an appeal from a decree in admiralty, dismissing a libel, filed by 14 seamen, as to 12 who are appellants in this court. A decree in favor of the other 2 libelants is not appealed from. The question presented by the appeal is whether the appellants properly demanded, and were entitled to the payment of, half wages earned, when their ship reached Port Arthur, Tex.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The libelants were shipped in London for a voyage to certain ports in the Gulf of Mexico, and back to a final port of destination in the United Kingdom, not to exceed one year. They signed shipping articles on November 26, 1916, and then received certain advances, and made certain allotments of their pay. The ship arrived at Port Arthur on January 9, 1917, and loaded some oil. There is a dispute as to the time of her arrival; the libelants testifying that she arrived in the morning, and the master and chief engineer that she docked at 3 p. m. After the ship docked, and on the same day, the crew demanded a payment of wages, in varying amounts from $5 to $15, as indicated on a list presented to the captain. The master told them that he had no money on the ship, and that it was impossible to then get it on shore, because the banks had closed, and offered the men orders for merchandise on the Gulf Refining Company's store at Port Arthur. The men demurred, but accepted the orders, were granted shore leave, and traded part of the amount of their orders in merchandise at the store. The succeeding morning they made another demand for half wages then earned, in cash, without deduction for advances and allotments made in London. The master replied to their demand that he had not enough money in the ship to pay their half wages, offering them $5 each, in addition to the amounts taken up by them in merchandise. The master and chief engineer also testified that the master also told the appellants that he would get more money for them from the bank as soon as he could, and return to the ship with it. The appellants declined to await his return, and left the ship for the purpose of libeling it, claiming that the captain's failure to pay them half wages earned entitled them to collect their full wages due and to their discharge from the ship. The captain, upon his return from Port Arthur with additional money, testified that he found some of them on the ship or on the dock, after a visit to the ship to get their effects, and offered then to pay them according to their demand, but that they declined to receive anything from him, upon the ground that it was too late. The ship sailed from Port Arthur without the appellants, and the captain entered them on the log as deserters from the ship. Upon the ship's arrival in New Orleans, the libel against it was filed.

The rightfulness of the appellants' position in leaving the ship depends (1) upon their right under section 4 of the Seamen's Act of 1915 (Act March 4, 1915, c. 153, 38 Stat. 1165 [Comp. St. § 8322]) to receive half wages earned from the time the voyage commenced till its arrival at Port Arthur, without deductions, and in money; and (2) upon whether they properly demanded half then earned wages from the master. The first question depends upon whether the ship should be credited with advances and allotments made in London, and upon whether payments in orders payable in merchandise are properly to be taken into account.

[1] We think an answer to the first question is unnecessary to a decision of the case. Whether there was an amount due the appellants or not, the master could be put in default, so as to entitle them to full wages and a discharge, only for failure to comply with a proper and

legal demand. Conceding that the first demand on the day of the ship's arrival at Port Arthur could only have been complied with by a money payment, if the appellants had stood on their right to nothing but a money payment, yet the fact is that they all both accepted and partly used the store orders. They could not use the orders and still dispute the validity of the payment. The acceptance of the orders and the use of them for less than the amount of half of their earned wages would not prevent their making a second demand for the unpaid portion of the then half of their earned wages. They made a demand on the morning of the second day. It may be conceded that it was a demand for the amount of wages they were entitled to demand under section 4 of the Seamen's Act. The captain, in response to the demand, according to appellee's testimony, which the District Judge found to be true, did not refuse to comply with the demand, but offered appellants each $5 immediately, and asked for time to get more money from the Port Arthur bank with which to supply any deficiency. There is a conflict in the evidence as to what happened between the master and the appellants on the occasion of the second demand, but the District Judge found the facts to be as stated, and an examination of the record supports the correctness of his conclusion. The appellee's evidence is also to the effect that the master thereafter procured the money and offered it to those of appellants who were at the ship or on the dock upon his return, and that they declined to receive it. No reference to this offer and refusal is found in appellants' testimony.

[2] A demand, to be legal, must afford the person on whom the demand is made a reasonable time to accede to it. If, upon the second demand, the master had pleaded inability to immediately comply, not coupled with a request for time to put himself in shape to comply, it might be construed to be a refusal to comply, which would entitle the appellants to full wages and a discharge. Upon the ship's arrival in port, the master was entitled to a reasonable time to prepare himself to comply with any demands made upon him for wages. The acceptance of the orders tendered by the master in response to the first demand authorized the master to assume that the men would not insist on further payment, at least until he was notified to the contrary by the second demand. He was not, therefore, in default for not having anticipated and prepared for the second demand. He was entitled to a reasonable time, after the making of the second demand, to get the money to comply with it. This was certainly true, if he requested the extension of such indulgence to him and expressed a purpose to put himself in shape to comply shortly with the demand, if granted, and this is what the record discloses in this case. The purpose of section 4 of the Seamen's Act was to furnish a remedy by which sailors could procure a proportion of their earned wages at each port, and not to provide a method by which the shipping articles could be terminated at the will of the seaman, because of a failure on the master's part to instantly comply with a demand by the seaman, which was made with the purpose of procuring the right to demand a discharge from the shipping articles, rather than the payment of half of the earned wages under them.

[3] The refusal of the appellants to grant the master a reasonable opportunity to get the money to comply with their demand indicates that the purpose of the demand was to put the appellants in a position to demand full wages due and their discharge. The object of the law would be perverted, if permitted to be so used. Our conclusion is that the District Judge correctly held that instant compliance with appellants' demand for half of their earned wages was an unreasonable requirement, and that appellants wrongfully left the ship, when they left for the purpose of enforcing their claim for full wages, after such a demand, and, as they left without the master's permission and with the intention not to return to it, are to be considered as deserters. As deserters, they forfeited their wages, and for that reason the libel, as to the appellants, was properly dismissed. Section 7 of the Seamen's Act of March 4, 1915 (Comp. St. § 8380); The London, 241 Fed. 863, 154 C. C. A. 565; In re Ivertsen (D. C.) 237 Fed. 498; The Elswick Tower (D. C.) 241 Fed. 706.

The decree appealed from is affirmed.