## THE HOUGOMONT.

### (Circuit Court of Appeals, Second Circuit.   April 7, 1921.)

### No. 203.

1. **Seamen �köⸯ24—Demand for half wages must be reasonable and be plainly made.**

   The demand on the master by seamen for the half of the wages to which they were entitled under Rev. St. § 4530, as amended by Seamen's Act, § 4 (Comp. St. § 8322), at an intermediate port, must be a reasonable demand, and must be plainly made, so that the master may know exactly what is demanded of him, since the refusal of the demand makes the whole wages instantly due, with possible damages.

2. **Seamen �köⸯ33—Penalty for refusal of half wages held waived by acceptance of part payment.**

   Where seamen, after their demand on the master for half wages at an intermediate port was refused, accepted payments from the master which amounted to more than the half wages then due them, they thereby waived their right to maintain a libel for the statutory penalties based on the refusal of the demand.

3. **Seamen ⊚ⸯ33—Right to penalty for refusal of half wages is waived by voluntarily remaining on the vessel.**

   Where seamen voluntarily remained on a vessel, performing services and receiving wages therefor, after their demand for the half wages due them at an intermediate port had been refused by the master, they waived their rights under the statute based upon such refusal.

4. **Seamen ⊚ⸯ26—Evidence held not to show demand for half wages.**

   On a libel by seamen, evidence that the libelants, who had not waived their rights after alleged refusal of their demand for half wages, had made no such demand in person, but were relying on an alleged demand made by other seamen, who had subsequently waived their rights based on such demand, *held* not to show that the positive demand for half wages required by the statute had been made.

5. **Seamen ⊚ⸯ24—Payments previously made are to be deducted from half of wages payable at intermediate port.**

   In computing the wages due to seamen at an intermediate port, half of which they are entitled to demand at that port, under Rev. St. § 4530, as amended by Seamen's Act, § 4 (Comp. St. § 8322), payments theretofore made to the seamen are to be deducted from the half of the wages which they are entitled to demand.

Appeal from the District Court of the United States for the Eastern District of New York.

Libel by Lionel Emerson and others against the bark Hougomont, of which John MacDonald was claimant. From a decree dismissing the libel, libelants appeal. Affirmed.

The Hougomont is a British vessel, and arrived at a pier in New York harbor on 27th December, 1917. The libel was filed by 11 seamen on 8th January, 1918. Two more intervened as colibelants by petition filed 17th January, 1918. Suit is under section 4 of the Seamen's Act of March 4, 1915 (38 Stat. 1165 [Comp. St. § 8322]), being the statute amendatory of R. S. § 4530, and enabling a seaman to receive on demand from the master of the vessel to which he belongs "one-half part of the wages which he shall have then earned" at any port where the vessel loads or delivers cargo, although the voyage for which the seaman shipped shall not have ended.

All the occurrences here involved took place before the changes in the statute referred to, by the Act of June 5, 1920 (41 Stat. 1006), commonly

⊚ⸯFor other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

known as the "Jones Bill." All 13 libelants averred in their pleading that on 29th December, 1917, they "individually and collectively" demanded from the master one-half of the wages which each of them had earned, "but the said demand was absolutely refused." It is averred that this demand was twice preferred on the same day. Claimant specifically denied these allegations, and the facts as found by us will be stated in the opinion.

At trial it appeared that on 31st December, 1917, the 11 original libelants went ashore and to the office of the "Legal Aid Society," where they or their spokesman obtained a written paper addressed to the shipmaster and reading: "Please take notice that we, the undersigned, demand one-half wages earned according to the provision of section 4530, U. S. Revised Statutes." Evidence was given that this writing (which no one ever signed) was given to the captain. This was denied, and the paper itself was produced from the possession of libelants' counsel.

It is proved, and indeed admitted, that all the libelants had received on account considerable sums beginning with the day of arrival. The issue of fact was whether or not they or any of them had demanded half wages under the statute. All of them stayed on board while the ship lay at her pier for nearly two weeks after libel filed, and during this time they did some work and received partial pay therefor and were fed at the ship's expense. On 23d January, 1918, all the libelants left. One of them subsequently changed his mind and refused to go on with this suit, which then proceeded in respect of the other 12 seamen.

The court below found that libelants demanded one-half their wages earned within less than five days after arrival in New York, without further specifying when such demand was made. It then dismissed the libel on the authority of The Italier, 257 Fed. 712, 168 C. C. A 662. The 12 remaining libelants then took this appeal.

Silas B. Axtell, of New York City, for appellants.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City (L. De Grove Potter, of New York City, and E. B. Long, Jr., of White Plains, N. Y., of counsel), for appellee.

Before WARD, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). As the demand pleaded, as well as all demands sought to be proved by libelants, were made less than five days after arrival in the port of New York, the court below dismissed the libel upon The Italier, supra. Since the ruling in Strathearn, etc., Co. v. Dillon, 252 U. S. 348, 40 Sup. Ct. 350, 64 L. Ed. 607, the reasons given for the decree appealed from are not good, and we are required to consider the facts anew.

The evidence as to what demands were made by crew upon captain, and how and when such demands were advanced, is extraordinarily confused and discordant. The man who ultimately refused to go on with this suit and testified for claimant denied on oath that he had ever made any demand, or that any demand had been made on his behalf; yet it is beyond question that he went ashore and signed the libel herein on January 5, 1918. The other men say that a demand was made by some spokesman or leader; but there is no agreement as to who that leader was.

Only a few things are clear from the evidence of a majority of the libelants: This sailing ship came in after a long voyage, apparently from Australia; the men had not been ashore, and there had been no tobacco for anybody, from captain to cabin boy, for months; all were

exceedingly anxious to get tobacco, to get money, and to get ashore. We believe that demands for money were made at once, and probably on December 29th, but do not believe that any demand for half wages was preferred on that day, much less that (as pleaded) two demands were made. It is believed that the original libelants were provided on December 31st with the paper writing hereinabove described, but we cannot find it as proven that such a paper was ever signed or served.

The fact is believed to be that all of the libelants wanted to leave the ship. In their own speech they wanted "to be paid off"—i. e., receive all their wages and a discharge—and they were told by the master that he was willing enough to do this, but that the British consul would not permit it. The reason for the men's staying aboard as they did was plainly that they hoped for a discharge; and it is, we think, a legitimate inference that the master permitted them to remain, hoping that they or some of them would conclude to stay by the ship, and in the meantime he furnished them with money and paid bills contracted by them on shore.

[1] The statute authorizing this libel presupposes a reasonable demand (The Pinna, 255 Fed. 642, 167 C. C. A. 18) plainly made. It must be plainly made, in order that the shipmaster may know exactly what is demanded of him; for by the statute, if he refuses half wages, whole wages instantly become due, together with possible damages. Where such important consequences hinge upon the making of a demand, it is obvious that clearness both in language and in proof is due from those who rely upon it.

[2-4] But there are some facts clearly appearing which defeat the suits of all but 3 libelants and weaken all the evidence upon which reliance must be placed for proving any demand. This libel was not filed until 8th January, and before that date all but 3 of the libelants had received more than half their wages then due. Of the remaining 3, one admits staying on board the ship long after libel was filed, and voluntarily acting as watchman. As to the remainder, there is no evidence of any special demand by them, or either of them; so that they must depend for proof of demand upon the evidence of those whose conduct has spoken louder than words—not to mention the positive denial of the witnesses for claimant.

[5] In computing the amount of wages due, as to half of which demand may be made under the statute, we accept the ruling in The London, 241 Fed. 863, 154 C. C. A. 565, certiorari having been denied 245 U. S. 652, 38 Sup. Ct. 11, 62 L. Ed. 532. It is understood, as pointed out above, that all these transactions having taken place before June 5, 1920, are unaffected by the statute of that date. We conclude, therefore, that the burden of proving a demand under the statute and for what the statute confers has not been borne by libelants; but, if it had been so borne, all the libelants waived whatever rights accrued from demand by accepting all the benefits of demand before suit brought or by remaining on board as seamen for nearly two weeks after demand, or by both such acts.

The decree is affirmed, with costs.