## THE TAIROA.

(Circuit Court of Appeals, Second Circuit. March 3, 1924.)

### No. 244.

Seamen ⬅24—Demand for half wages must be made in good faith and while seaman is still serving the ship.

Under Rev. St. § 4530, as amended by Seamen's Act, § 31 (Comp. St. Ann. Supp. 1923, § 8322), the demand for half wages must be made in good faith and while the seaman is still serving the vessel, and the penalty for waiting time under section 4529 (Comp. St. § 8320) cannot be recovered where the seaman, prior to the demand for half wages, deserts the vessel, nor where the master has not had a reasonable time to comply with the demand.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by Frank McCown and others against the steamship Tairoa; the International Mercantile Marine Company, claimant. Decree for respondent, and libelants appeal. Affirmed.

There were originally five libelants, each of whom demanded in the libel waiting time penalty under Revised Statutes U. S. § 4529 (Comp. St. § 8320), quoted in the margin.[1]

Libelants were under British shipping articles on the steamship Tairoa, a British vessel, and were to be signed off at a port in the United Kingdom. The articles had about 1½ years to run when the Tairoa arrived at New York on Thursday night, January 27, 1921. On Friday morning, January 28, the five libelants asked the master to discharge them and he refused.

Without obtaining leave libelants immediately went ashore and consulted a union delegate, who gave them a paper demanding half pay under Revised Statutes U. S. § 4530 (Comp. St. § 8322). They returned to the vessel at noon on Friday and presented to the master this paper, signed by the five libelants. The master did not pay the men at that time. He asked Moore, one of the libelants and apparently their spokesman, to read a form which he said that he had obtained from the British consul the last time he was in New York and Moore read this. The witnesses did not remember clearly what this form was. It referred to wages, but apparently not to half pay.

The British master did not know the provisions of the statute in that regard, and supposed he had no right to give the men half pay. He told Moore to "go out and find out something about it, and come back and tell me. * * * You go ashore and find out from the consul. * * *" The master concluded that he himself would go to the office of the line. This he did, and he was advised to give the men half pay. He immediately instructed the chief steward accordingly and returned to the ship in the early afternoon. Meanwhile libelants had again gone ashore and had "seen the union delegate again, and he sent us to the head man. * * * He sent us to this lawyer [proctor for libelants], and he took the case."

The libel was prepared and verified that afternoon, January 28th, and the men did not return to the ship. Before libelants made any demand for half wages, they had refused to work. On cross-examination, Moore testified that he had not been discharged from the ship, and that he had refused to work, and that he had not done any work on Friday; that before he demanded half pay of the master he had not done any work, although he had work to do. McCowan, on cross-examination, testified that he did not receive permission to go ashore on Friday, and did not say anything to any officer of the ship about going ashore; that he had demanded half pay about 11 or 12 o'clock on Friday, and had stood his watch before that, but that he had not stood his watch on Friday afternoon.

After the master had been instructed by Mr. Hamm, of the White Star Line, to give the men half wages, and in turn had instructed the chief steward, as above stated, he was ready and willing to pay all the men half wages. On February 21, 1921, claimant's proctor sent to libelants' proctor a check for $690, with a letter stating this to be in full payment of the claim of McCowan and Moore. Certain correspondence followed, and the result is that the appellee claims that there was accord and satisfaction.

---

[1] Revised Statutes U. S. § 4529: "The master or owner of every vessel making voyages from a port on the Atlantic to a port on the Pacific, or vice versa, shall pay to every seaman his wages, within two days after the termination of the agreement, or at the time such seaman is discharged, whichever first happens; and, in the case of vessels making foreign voyages, within three days after the cargo has been delivered, or within five days after the seaman's discharge, whichever first happens; and in all cases the seaman shall, at the time of his discharge, be entitled to be paid, on account, a sum equal to one-fourth part of the balance due to him. Every master or owner who neglects or refuses to make payment in manner hereinbefore mentioned, without sufficient cause, shall pay to the seaman a sum not exceeding the amount of two days' pay for each of the days, not exceeding ten days, during which payment is delayed beyond the respective periods, which sum shall be recoverable as wages in any claim made before the court. But this section shall not apply to the masters or owners of any vessel the seamen on which are entitled to share in the profits of the cruise or voyage."

At the trial all claims were withdrawn, except those of Moore and Mc-Cowan, and the District Judge dismissed the libel as to the claims of these two men.

Silas B. Axtell, of New York City (Charles H. Kriger, of Brooklyn, N. Y., of counsel), for libelants.

Burlingham, Veeder, Masten & Fearey, of New York City (William J. Dean and Ray Rood Allen, both of New York City, of counsel), for claimant.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

MAYER, Circuit Judge (after stating the facts as above). We think it unnecessary in this case to pass upon the question as to whether Revised Statutes U. S. § 4529, applies to foreign vessels when in an American port. The testimony clearly shows that, when the libelants left the vessel without leave, they had not made a demand for half wages, but had demanded that they be paid off and discharged. They were not entitled to be discharged, nor to receive full pay, and the master properly refused to discharge them. Revised Statutes U. S. § 4530, reads as follows:

"Every seaman on a vessel of the United States shall be entitled to receive on demand from the master of the vessel to which he belongs one-half part of the balance of his wages earned and remaining unpaid at the time when such demand is made at every port where such vessel, after the voyage has been commenced, shall load or deliver cargo before the voyage is ended, and all stipulations in the contract to the contrary shall be void: Provided, such a demand shall not be made before the expiration of, nor oftener than once in, five days nor more than once in the same harbor on the same entry. Any failure on the part of the master to comply with this demand shall release the seaman from his contract and he shall be entitled to full payment of wages earned. And when the voyage is ended every such seaman shall be entitled to the remainder of the wages which shall be then due him, as provided in section 4529 of the Revised Statutes: Provided further, that notwithstanding any release signed by any seaman under section 4552 of the Revised Statutes any court having jurisdiction may upon good cause shown set aside such release and take such action as justice shall require: And provided further, that this section shall apply to seamen on foreign vessels while in harbors of the United States, and the courts of the United States shall be open to such seamen for its enforcement." 41 Stat. 1006 (Comp. St. Ann. Supp. 1923, § 8322).

Under this section, it is plain that the demand for half wages must be made in good faith and while the seaman is still serving the vessel. It may very well happen that the master would not have sufficient funds, and, while he is presumed to know the law, he is entitled to a reasonable opportunity to be advised with reference thereto and to obtain appropriate instructions. What is a reasonable time is always determined by the particular facts of the case. If, for the purpose of argument and without deciding the question, it be assumed that section 4529 applies to seamen of a foreign vessel in an American port, a recovery for waiting time penalty cannot be had, where the seaman, prior to the demand for half wages, deserts the vessel, or where the master has not had a reasonable opportunity to comply with the demand.

In expressing this opinion we are merely restating what has heretofore been stated by the courts in several cases. The Belgier (D.

C.) 246 Fed. 966; The Pinna, 255 Fed. 642, 167 C. C. A. 18; The Italier, 257 Fed. 713, 168 C. C. A. 662; The Hougomont (C. C. A.) 272 Fed. 881. We might have concluded to affirm the decree below because there was accord and satisfaction, but we prefer to place our decision on the ground indicated supra, in order that it be made clear that, to avail of relevant remedial statutes, there must be a demand by the seaman in good faith prior to any act which can be construed as desertion.

Decree affirmed.