## THE NANCY.

(District Court, E. D. Pennsylvania. February 26, 1926.)

No. 9 of 1926.

1. Seamen ⚖==33—Seamen, denied half pay immediately when demanded, held not entitled, after abandoning ship, to full pay to date of refusal and double pay to date of payment (Rev. St. §§ 4529, 4530, as amended by Seamen's Act March 4, 1915, §§ 3, 4 [Comp. St. §§ 8320, 8322]).

Where seamen, after vessel, was forced into port by ice before reaching destination, on learning master was short of funds, demanded half pay, and, on being told that ship's agent had been telegraphed to send money, and that master would see what he could do in the morning, abandoned the ship; they were not, under Rev. St. §§ 4529, 4530, as amended by Seamen's Act March 4, 1915, §§ 3, 4 (Comp. St. §§ 8320, 8322), entitled to full pay to date of refusal and double pay to date of payment.

2. Seamen ⚖==33—Demand for wages in sum not equivalent to half pay is not demand under statute (Rev. St. §§ 4529, 4530, as amended by Seamen's Act March 4, 1915, §§ 3, 4 [Comp. St. §§ 8320, 8322]).·

Seamen's demand for wages in a sum not equivalent to one-half pay is not a demand under Rev. St. §§ 4529, 4530, as amended by Seamen's Act March 4, 1915, §§ 3, 4 (Comp. St. §§ 8320, 8322), as affects right to discharge with full pay.

3. Seamen ⚖==33—Seamen's Act held not intended to secure seamen benefits if claim is based on unreasonable conduct in connection with demand (Rev. St. §§ 4529, 4530, as amended by Seamen's Act March 4, 1915, §§ 3, 4 [Comp. St. §§ 8320, 8322]).

While Rev. St. §§ 4529, 4530, as amended by Seamen's Act March 4, 1915, §§ 3, 4 (Comp. St. §§ 8320, 8322), was intended for protection of seamen, it was not intended to secure to them benefits based on unreasonable and arbitrary conduct in connection with their demand for half pay.

In Admiralty. Libel for wages by Vernon Hart and others against the schooner Nancy. Libel dismissed.

Willard M. Harris, of Philadelphia, Pa., for libelants.

Howard M. Long, of Philadelphia, Pa., for respondent.

THOMPSON, District Judge. The libelants, Vernon Hart, R. H. Phillips, G. T. Evans, Curt Ruehr, John W. Mathews, and James Gay, filed their libel, and attached the schooner Nancy upon a claim for wages. The libelants shipped on the schooner at Norfolk, Va., on December 3, 1925, for a voyage from Norfolk to Bangor, Me., for a period not to exceed four months, and return to a point of discharge north of Cape Hatteras. The wages were at the rate of $60 per month. The schooner arrived at Searsport, Me., on December 21st, with a cargo of coal, and was unable to proceed to Bangor because of ice. The libelants claim under section 4530, R. S., as amended by section 4 of the Seamen's Act of March 4, 1915 (Comp. Stat. § 8322), and section 4529, R. S., as amended by the same act (section 3 [Comp. Stat. § 8320]). They aver that shortly after the arrival of the vessel at Searsport, Me., they requested the master to pay them each a part of their wages in order that they might provide themselves with clothing, but that the master refused to pay them any money whatever; that thereupon they demanded of him one-half of their wages; and that the request was refused.

It is admitted that the libelants requested an advance on account of wages due, but were informed that the owner's agent would arrive the following day and pay them on account of their wages. It is denied that they demanded half wages as alleged, and it is further denied that the master refused to make them any advances.

From the testimony the following facts are found: The libelants were afforded full opportunity while at Norfolk, Va., to purchase whatever clothing and tobacco they would require on the voyage, and obtained at Norfolk, through Capt. Forde, the agent of the vessel, and the husband of its owner, upon their orders, oilskins, sea boots, underwear, mittens, and caps as an advance upon their wages. The expenditures thus made on their behalf were as follows: Ruehr, $16; Gay, $15.40; Mathews, $15; Hart, $18.75; Evans, who stated that he was substantially provided with clothing, $4.50; and Phillips, $17.25.

It is apparent from the testimony that, because of the ice, the schooner could not deliver her cargo at Bangor, and that arrangements had to be made to discharge at Searsport. The six libelants procured Evans to represent them in requesting advances on account of their wages. The master, Capt. Kessler, informed them that he had no funds, but that the agent for the vessel was expected to arrive, and that they would then receive the advances requested. As Capt. Forde, the agent of the vessel, had not arrived on the 23d, Evans, on that day, informed the master that he could not go to sea without tobacco and clothes, and that, if he could not get half his money the following day, he was leaving the ship. The libelants had already been informed by the captain that he could not find the parties to whom the coal was consigned, and that he had telegraphed to the agent to

send him money. When Evans made the demand for half wages, the captain said: "I will see what I can do in the morning."

Evans' request was made on behalf of all of the libelants.

Evans testified as follows:

"Q. If you had received that $10, did you intend to stay by the ship and go back on her? A. Certainly.

"Q. And, if you had got half pay, would you have gone back with her? A. No; not if I had got my half pay."

And on cross-examination he testified:

"Q. Just one question, Mr. Evans. You were the spokesman for the other members of the crew? A. Yes, sir.

"Q. They appointed you to go up? A. Yes, sir.

"Q. In other words, you all agreed that, whatever you did, you were going to do the same thing? A. Yes, sir."

They left the schooner on December 24.

It is contended on behalf of the libelants that the master's failure to comply with the libelant's request for half pay at Searsport, the point of discharge, entitles them to their pay at the rate of $60 per month, or $2 per day, less the amounts advanced them respectively at Norfolk, together with double wages to the date of filing the libel, and also double wages from the date of filing the libel to the date when actually paid.

[1, 2] The Seamen's Act (38 Stat. 1164) entitles every seaman on a vessel of the United States to receive, on demand from the master of the vessel, one-half part of the wages which he shall have then earned at every port, where such vessel, after the voyage has been commenced, shall load or deliver cargo before the voyage is ended. The demand for a sum not equivalent to half pay is not a demand under the terms of the act, and the libelants apparently became aware of this fact, for, upon learning that the master was not provided with funds with which he could comply with their request, they then, through Evans, on December 23d demanded their half pay, which was coupled with an intention on their part, upon receiving the half pay, to leave the vessel. In response to their request, Evans was informed, as were others of the libelants, that the master was not immediately able to comply with their demand for half pay, and that he would see what he could do on the following day.

It was not reasonable upon their part to expect instant compliance with their demand. They were informed by the master that he could not find the owners of the cargo. That was an entirely natural consequence of his inability to land the cargo at Bangor, the port of destination. It was also a natural consequence of that situation that he should wire Capt. Forde, the agent, of the situation and of his need for funds, and the libelants were informed of that fact.

[3] While the act is intended for the protection of seamen, it is not intended to put it into their power to secure the benefits of the act, if their case is based upon such unreasonable and arbitrary conduct in connection with their demand as appears in this case. The Pinna, 255 F. 642, 167 C. C. A. 18. The Hougomont (C. C. A.) 272 F. 881. From all the circumstances developed by the evidence, I am forced to the conclusion that it was the intention of the libelants, if they got their half pay, to leave the ship and not to complete the voyage. They apparently assumed that, upon receiving the half pay, they were entitled to "sign off," as it was expressed by Evans. The case bears all the earmarks, judging from the conduct of the libelants, of a deliberate attempt to speculate under the terms of the Seamen's Act, upon a technical refusal of their demand for half pay, in order to establish the right to a discharge with full wages to the date of refusal and double wages to the date of actual payment. It is conclusively shown by the testimony that the master acted in good faith when he stated the grounds of his inability to meet the demand instantly. Capt. Forde arrived at Searsport on the 25th with funds to meet the vessel's liabilities for wages. When the libelants left the vessel, they did so in violation of their shipping articles for the voyage, deserted the ship, and forfeited their wages.

The libel is dismissed.