UNITED STATES v. ALBERS et al.

No. 900.

Circuit Court of Appeals, Second Circuit.

Dec. 9, 1940.

Richard M. Cantor, of New York City (Harold Mayer, of New York City, on the brief), for appellants.

John T. Cahill, U. S. Atty., of New York City (Frank H. Gordon and Robert L. Werner, Asst. U. S. Attys., both of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

The appellants were unlicensed members of the crew of the Steamship "Ewa", a merchant vessel of the Matson Navigation Company which sailed from the port of New York in December, 1939. They were convicted under an indictment charging in count one, that between February 26 and April 2, 1940, at the harbor of Colombo, Island of Ceylon, at Kolachel Anchorage, Tranvancore, India, and at various other places on the high seas, they endeavored to make a revolt and mutiny on board said vessel, contrary to § 292 of the Criminal Code, 18 U.S.C.A. § 483, set forth in the margin.[1] Count two of the

indictment charged a conspiracy to make such revolt and mutiny. Upon the second count the jury brought in a verdict of acquittal; but upon the first count all the appellants were found guilty, with a recommendation of extreme leniency. Eleven of them were sentenced to various terms of imprisonment, the longest being three months. As to five, Whitlock, Solon, Sokolowsky, Iversen and Blades, imposition of sentence was suspended and each was placed on probation for one year.

The appeals of the five appellants placed on probation with imposition of sentence suspended must be dismissed. There is a distinction between suspending execution of sentence and suspending imposition of sentence. If sentence is imposed but execution thereof suspended, there is a final judgment from which an appeal will lie. Berman v. United States, 302 U.S. 211, 58 S.Ct. 164, 82 L.Ed. 204. But if imposition of sentence is suspended, no final judgment is entered; hence no appeal is possible. Birnbaum v. United States, 4 Cir., 107 F.2d 885, 126 A.L.R. 1207; United States v. Lecato, 2 Cir., 29 F.2d 694.

The appellants assert numerous errors in the conduct of the trial. Their first contention is that the charge of the court did not accurately define the statutory offense of endeavoring to make a revolt or mutiny, but permitted the jury to convict for mere acts of disobedience of orders of the master. Reading the charge as a whole we do not think this criticism can be supported. The charge contains the explicit statement: "I will say to you that to constitute an endeavor to commit a revolt it is necessary that there should be some effort or acts to stir up members of the crew to disobedience of the master." This definition of the offense charged in count one of the indictment was adequate. To constitute an endeavor to make a revolt within the meaning of the statute as construed by the

---

[1] "§ 483. (Criminal Code, section 292.) Inciting revolt or mutiny on shipboard. Whoever, being of the crew of a vessel of the United States, on the high seas, or on any other waters within the admiralty and maritime jurisdiction of the United States, endeavors to make a revolt or mutiny on board such vessel, or combines, conspires, or confederates with any other person on board to make such revolt or mutiny, or solicits, incites, or stirs up any other of the crew to disobey or resist the lawful orders of the master or other officer of such vessel, or to refuse or neglect their proper duty on board thereof, or to betray their proper trust, or assembles with others in a tumultuous and mutinous manner, or makes a riot on board thereof, or unlawfully confines the master or other commanding officer thereof, shall be fined not more than $1,000, or imprisoned not more than five years, or both."

courts, it is not necessary that the accused shall intend to usurp the master's command and put another in his place; concerted disobedience by only part of the crew or an effort by only one member to incite or encourage disobedience by others is enough. Thus in United States v. Haines, C.C.Mass., 26 Fed.Cas. 62, No. 15,275, seven members of the crew who refused to do any work under a new captain in the belief that they were not bound to serve under him were convicted of an endeavor to commit a revolt. In Hamilton v. United States, 4 Cir., 268 F. 15, certiorari denied, 254 U.S. 645, 41 S.Ct. 15, 65 L.Ed. 454, the ship put into a harbor or refuge and while there the six months' period for which the crew had signed on expired. They refused to do further work, contending that their service ·was ended; but they stayed aboard the ship and a new crew was hired to bring the vessel home. The old crew committed no violence, nor did they intend to take over the command. Nevertheless they were held guilty of an endeavor to make a revolt. This case parallels the case at bar almost exactly. In both the men believed that they were legally justified in their acts, and in both they remained on the ship but concertedly refused to obey orders to work. Similarly in Rees v. United States, 4 Cir., 95 F.2d 784, where the crew refused to work while "scab" stevedores were loading the ship, it was held that the concerted refusal to work resulted in a transfer of authority from the master and constituted a violation of the statute. In the light of these decisions the court's charge as to the elements of the offense was sufficient and we find no error in refusal of the requests to charge on this subject.

A further attack upon the charge is based on the instructions given with respect to the rights of the crew under 46 U.S.C.A. § 597. This statute entitles a seaman to demand and receive, at any port where cargo is laden or delivered during the voyage, one half of the wages earned and remaining unpaid at the time of such demand. It provides that any failure on the part of the master to comply with the demand shall release the seaman from his contract and entitle him to full payment of wages earned. The Ewa arrived at Kolachel Anchorage on March 4, 1940. About 3 P. M. on that day three delegates, who respectively represented the men in the deck department, engine room, and steward's department, asked the master for a "draw" of wages. The master refused with some irritation. Half an hour later the delegates returned and announced that the crew considered the articles broken and wanted their full pay. That evening the master computed the amount of each man's draw and early the next morning informed the delegates that the men could have their draw. They refused the offer, standing· on their contention that the articles had been broken. The crew then roped off part of the after deck for their own use and refused to do any work. Loading of cargo was carried on by the officers and natives whom the master hired. Though orders were given to sail on March .12th, they were not obeyed by the crew. Both the master and the men had been communicating by wireless with the American consul at Madras, the men demanding that he come and pay them off, and the master seeking advice. The consul advised that settlement of the dispute should be postponed until the ship reached Aden, where a vice-consul was stationed. The delegates informed the master that the crew would not go to Aden, but finally, after the master had gone aft and ordered each man by name to turn to, the ship did sail on the 15th. From Aden, on the advice of the vice-consul, it proceeded to Port Said. There the crew refused to prepare the vessel for the return voyage to the United States. They were paid off and the ship sailed home with a new crew.

The appellants contend that by virtue of the above mentioned statute the master's refusal of their demand for half wages on March 4th released them from their contract, and any offer on the following morning to pay the draw was immaterial. The trial judge in effect charged that, if such offer was made, the shipping articles were not broken and the crew had no right to disobey any of the captain's orders. The cases interpreting the statute indicate that the drastic consequences resulting from a refusal of the seaman's demand require a certain liberality in determining what shall be considered as constituting a refusal. They hold that the master must be given a reasonable time—at least if he requests it—in which to ascertain the situation and meet the demand; further, the demand must be made in good faith and may not be used to obtain a technical breach of the articles in order to enable the men to abandon a ship which for other reasons they

no longer wish to serve. The Havenside, D.C.N.Y., 14 F.2d 851; The Tairoa, 2 Cir., 297 F. 449; The Hougomont, 2 Cir., 272 F. 881; The Pinna, 5 Cir., 255 F. 642; The Belgier, D.C.N.Y., 246 F. 966. In all of these cases the technical breach was not given effect because the master was not granted a reasonable time in which to meet the demand, or because the demand was not made in good faith. In the case at bar, where the demand was made on behalf of the entire crew, the master would certainly have been entitled to insist upon a reasonable opportunity to compute the sums due and to procure the money to pay them. He did not, however, ask for time. On his own story his refusal was absolute; he was "sore". Whether the effect of an absolute refusal of a bona fide demand may be vitiated by its prompt retraction, accompanied by an offer to make the requested payment, as the trial judge charged, is a question which has not been elsewhere adjudicated, so far as we are advised. Nor need we decide it here. The alacrity with which the crew seized upon the refusal as a breach of the articles and a release from the duty to obey orders, while they continued to remain on board, is convincing proof that their demand was not made in good faith. But the issue of the good faith of their demand was not submitted to the jury. However, we think it was unnecessary for the trial judge to have given any charge on the subject of the statute relating to draws, and consequently errors, if any, in the instructions concerning it were immaterial. This conclusion is based on the following reasoning. If the master's refusal constituted a breach of the shipping articles, the seamen were privileged to treat it as a total breach which terminated all their rights and obligations as members of the crew. In this event they were no longer entitled to remain on board and occupy the quarters of the crew. The statute merely gave them the right to full pay to date and the privilege of leaving the service of the ship without being chargeable with desertion and resulting forfeiture of pay; it did not give them the right to stay on board and do as little or as much work as they choose. They had no right whatever aboard except as members of the crew and their declaration that they would consider the refusal of their demand for pay as ending the ship-

ping articles was a nullity, unless they maintained that position consistently. They cannot have it both ways; asserting rights as members of the crew but denying their duties as such. It would be an utterly intolerable construction of the statute that would permit seamen to remain on board, occupying the quarters of the crew and eating at the ship's expense, and yet freed from the duty to work or obey orders of the master. This is just what the appellants proposed to do; they made no move to leave the ship despite their assertion that their contracts were ended. Therefore they remained as members of the crew and as such were subject to the master's orders. Any error in the charge regarding the statute could not be prejudicial in view of the undisputed facts.

■ From what has already been said it is apparent that there was ample evidence to support the verdict. There was no error in denying the motion for a directed verdict of acquittal.

We have examined also the numerous errors asserted by the appellants in respect to the admission and exclusion of evidence, the interference with cross-examination, the prejudicial comment alleged to have prevented a fair trial, and the denial of the defendants' motion for a bill of particulars. None of them, in our opinion, requires reversal of the judgment, nor discussion in this opinion.

■■ Finally, it is urged that the verdict was obviously a compromise and for that reason should not be allowed to stand. Doubtless it is true that the evidence which justified conviction on the first count could as well have been accepted by the jury to prove guilt on the second. But it is well established that each count of an indictment is a separate charge and that a verdict on one count may stand regardless of its inconsistency with the verdict on another. Dunn v. United States, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356, 80 A.L.R. 161; United States v. Pandolfi, 2 Cir., 110 F.2d 736, certiorari denied, 310 U.S. 651, 60 S.Ct. 1103, 84 L.Ed. 1416.

Finding no prejudicial error in the charge or in the conduct of the trial we affirm the judgment with respect to the eleven appellants upon whom sentence was imposed. The appeals of the five placed on probation with imposition of sentence suspended are dismissed.